IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **PETER KIEWIT SONS' INC. and KIEWIT CORPORATION,** ) ) ) **Plaintiffs,** ) ) **v.** ) ) **ATSER, LP,** ) ) **Defendant.** ) | **CASE NO. 8:08CV541** **MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction (Filing No. 3). On December 31, 2008, the Court entered a temporary restraining order enjoining Defendant ATSER, LP, from "disrupting or terminating the Plaintiffs' access to that certain web technology and software which allows the Plaintiffs to access and manage data relating to its engineering and construction projects, which technology and software is the subject of the "Software License Agreement" entered into on August 20, 2005, between the parties" (Filing No. 9).

The Court received evidence and heard arguments on the Motion for Preliminary Injunction on Friday, January 9, 2009, at 1:30 p.m. The Court also reviewed and considered the briefs and evidence filed by the parties.

**FACTUAL BACKGROUND**

Plaintiffs, Peter Kiewit Sons', Inc., and Kiewit Corporation (collectively "Kiewit"), is a large construction, engineering, and mining organization with its headquarters in Omaha, Nebraska. Defendant, ATSER, LP ("ATSER"), is an engineering firm located in Houston, Texas. ATSER markets a quality assurance automation software program, Assure-IT™ ("Licensed Software"). On August 20, 2005, Kiewit and ATSER entered into a Software License Agreement (Filing No. 5-4, p. 1), in which ATSER granted Kiewit a "nonexclusive,

nontransferable, fully paid up and perpetual single service license" to use the Licensed Software.

In addition to its own terms, the Software License Agreement appears to incorporate the language of a proposal prepared by ATSER for Kiewit. (Filing No. 5-4, pp. 1, 8). The proposal included several "phases" of service including setup and implementation, training, maintenance, and data center hosting and technical support. The proposal included a provision by which Kiewit could request that the Licensed Software be relocated to its own server. The parties agreed that ATSER would provide the server, technical support, and database management for the Licensed Software, to which Kiewit had access, from August 20, 2005, through December 2008. In late December 2008, after the parties had spent several months negotiating a new or continued service agreement, Kiewit asked to have the Licensed Software transferred to its own server.

On December 31, 2008, Kiewit initiated this action and filed a Motion for Temporary Restraining Order and Preliminary Injunction (Filing No. 3) seeking to restrain ATSER from disrupting or terminating Kiewit's access to the Licensed Software. Kiewit contends that it asked ATSER to transfer the Licensed Software to a Kiewit server and that ATSER refused to facilitate the transfer and threatened to disrupt or terminate Kiewit's access to the software system.

In response, ATSER contends that it made no threat to disrupt or terminate Kiewit's access to the Licensed Software, and has not disrupted or terminated Kiewit's access. ATSER alleges that Kiewit's request to transfer the Licensed Software to its own server was unreasonable in that Kiewit did not allow enough time to facilitate a responsible transfer and did not offer any remuneration for the transfer. ATSER further alleges that the three-year agreement to provide service expired on December 31, 2008, due to the parties' inability to reach an agreement to extend the contract.

## DISCUSSION

In determining whether a preliminary injunction should issue, the Court is required to consider the factors set forth in *Dataphase Systems, Inc. v. C.L. Sys. Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (*en banc*). A district court should weigh "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.*

The burden of establishing the necessity of a preliminary injunction is on the movant. *Baker v. Electric Co-op, Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir.1994). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker*, 28 F.3d at 1472 (quoting *Calvin Klein Cosmetics Corp. v. Lenox Labs, Inc.,* 815 F .2d 500, 503 (8th Cir.1987)).

I find that the balance of the required *Dataphase* elements weighs in favor of Kiewit's request for temporary injunctive relief. First, Kiewit has shown that there is an imminent threat of irreparable harm, in terms of its ability to "collect, manage, report and analyze an enormous amount of engineering and construction information for [its] major construction products" due to its reliance on the Licensed Software and the technical support necessary to utilize it. Given Kiewit's reliance on the Licensed Software to conform with contractual requirements of governmental construction projects, Kiewit's injury to its business reputation and goodwill may not be remedied by money damages. Second, the issuance of an injunction is unlikely to cause any harm to third parties, and any harm to ATSER may be remedied by money damages. Third, while the Court is not persuaded that Kiewit is likely to succeed on the merits of its claims, the Court cannot conclude at this early stage of the proceedings that Kiewit's claims are without merit. Finally, it is in the public

interest to issue certain injunctive relief given Kiewit's involvement with public works projects that may affect public health, safety and welfare.  I conclude that a temporary injunction is warranted in favor of Kiewit.

For those reasons, the Court will grant Kiewit's Motion for Preliminary Injunction, in part, as follows:

IT IS HEREBY ORDERED:

1. Kiewit's Motion for a Preliminary Injunction (Filing No. 3) is granted, in part;

2. ATSER is restrained from disrupting or terminating Kiewit's access to the Licensed Software;

3. ATSER will facilitate the transfer of the Licensed Software and the accumulated historical data belonging to Kiewit to a server identified by Kiewit, so that it will become a self-hosted program;

4. ATSER will not, as a part of this Preliminary Injunction, be required to transfer to Kiewit or its agents any service codes for which ATSER holds copyright or to which ATSER otherwise claims exclusive ownership;

5. ATSER will continue to provide maintenance and help desk services to Kiewit as provided in the initial contract and service agreement such that the system is serviceable to Kiewit;

6. Kiewit immediately will remit $6,000.00 to ATSER for maintenance and help desk services in accordance with the terms of the Software License Agreement and incorporated Proposal;

7. ATSER may file, no more frequently than once each calendar month, requests for interim payments reflecting the reasonable costs it incurs in the transfer of the Licensed Software and historical data to Kiewit's server, and shall include a certificate of service demonstrating service of the request on Kiewit's counsel;

8. Within ten business days after Kiewit's counsel receives a request from ATSER for interim payment, Kiewit will (a) make payment of the requested sum to ATSER, which payment will not be deemed an admission of the reasonableness of the billing; or (b) file a request for hearing before this Court on the question of the reasonableness of the billing;

9. The terms of this Preliminary Injunction will remain in effect until July 9, 2009; or until further order of this court;

10. Further hearing on the Preliminary Injunction is scheduled for July 6, 2009, at 1:00 p.m.;

11. At the time of the July 6 hearing, this Court will receive evidence and hear argument concerning the reasonableness of the $6,000 sum ordered to be paid by Kiewit to ATSER for maintenance and help desk services in 2009, the reasonableness of payments requested and/or made for the transfer of the Licensed Software to Kiewit's server, and further preliminary relief requested by the parties;

12. Pursuant to Rule 65(c) and the previous provisions of this Order, the Court in its discretion will not require Kiewit to post a bond with the Clerk of Court of the United States District Court for the District of Nebraska; and

13. Plaintiffs' Motion for an Order to Show Cause (Filing No. 14) requesting that the Court find ATSER in contempt of the Temporary Restraining Order and impose sanctions is denied.

DATED this 12th day of January 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge