**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| PETER KIEWIT SONS' INC. and KIEWIT CORP., | ) ) ) | 8:08CV541 |
| Plaintiffs, | ) ) | ORDER |
| vs. | ) ) | and |
| ATSER, | ) ) ) | REPORT AND RECOMMENDATION |
| Defendant. | ) | |

This matter is before the court on the plaintiffs', Peter Kiewit Sons', Inc. and Kiewit Corp. (collectively Kiewit), objections (Filing Nos. 51, 73, 88, 109, and 135) in response to ATSER's requests for interim payment (Filing No. 41 Ex. 1; Filing No. 62 Exs. 1 and 2; Filing No. 84 Ex. 1; Filing No. 107 Ex. 1; and Filing No. 133 Ex. 1). Kiewit challenges the reasonableness of the payment requests and submitted a brief (Filing No. 81) and an index of evidence (Filing No. 80) in support of Kiewit's objections. ATSER filed a brief (Filing No. 89) and an index of evidence (Filing No. 90) in opposition to the objections. Kiewit filed a reply brief (Filing No. 131) and an index of evidence (Filing No. 132).

On July 7, 2009, the court held an evidentiary hearing on Kiewit's objections. The court heard testimony from Kiewit's Application Analyst Scott Pfender (Mr. Pfender), ATSER's Vice President of Systems Nainesh Vora (Mr. Vora), ATSER's President Robert Bledsoe (Mr. Bledsoe), and ATSER's Chief Executive Officer David Frederick Martinez (Mr. Martinez). The parties relied on the evidence filed with their briefs and Kiewit offered a number of new exhibits during the hearing. **See** Filing No. 151. A transcript (TR.) of the hearing was filed on July 13, 2009. **See** Filing No. 159. After the hearing, Kiewit filed a closing brief (Filing No. 160) and an index of evidence (Filing No. 161). ATSER filed a closing brief (Filing No. 162). ATSER also filed an Objection and Motion to Strike (Filing No. 163) Kiewit's post-hearing index of evidence.

**FACTUAL BACKGROUND**

This action arises based on the contractual relationship between the parties. Kiewit is a construction, engineering and mining organization. **See** Filing No. 1 Complaint ¶ 8. ATSER is an engineering, and quality management firm who provides technology-based services to public and private entities for the collecting, managing, reporting, and analyzing of engineering and construction information for major construction projects. **See** Filing No. 98 Counterclaim ¶ 7. Kiewit alleges ATSER breached the parties' contract by failing to relocate Assure-IT, a web-based software and database, to a Kiewit server and by threatening to disrupt or terminate Kiewit's access to Assure-IT. **See** Filing No. 1 Complaint ¶ 21. Kiewit further alleges ATSER failed to act in good faith by failing to adhere to the parties' contract. *Id.* ¶ 26.[1] Kiewit alleges general and consequential damages and immediate and irreparable harm for the threatened disruption or termination of Kiewit's access to Assure-IT. *Id.* ¶ 29.

On August 20, 2005, Kiewit and ATSER entered into a Software License Agreement (Software Agreement) pursuant to which ATSER agreed to provide web-based technology and software to manage and track progress and funding for Kiewit's engineering work. **See** Filing No. 1 Complaint ¶ 11; Filing No. 98 Counterclaim ¶ 9; Filing No. 5 Ex. 3 Software Agreement p. 1. Under the Software Agreement, ATSER provided a server, technical support, and database management for Assure-IT, to which Kiewit had access from August 20, 2005, through December 31, 2008. **See** Filing No. 5 Ex. 3 Software Agreement p. 1. Additionally, the web-based program could be relocated, by ATSER, to a Kiewit server upon Kiewit's request. **See** Filing No. 5 Ex. 3 Software Agreement's incorporated Aug. 19, 2005 Proposal p. 5. After negotiations to extend the contract failed to materialize into a new contract by December 19, 2008, Kiewit requested ATSER provide Kiewit with self-hosting capabilities by January 1, 2009. **See** Filing No. 1 Complaint ¶¶ 17-18. ATSER informed Kiewit that ATSER could not transfer Assure-IT to Kiewit by January 1, 2009. **See** Filing No. 90 Ex. 2 Martinez Decl. ¶ 10. ATSER denies Kiewit's allegation

---

[1] On May 19, 2009, the court dismissed Kiewit's claim based on the covenant of good faith and fair dealing in response to a motion filed by ATSER. **See** Filing No. 87 Order p. 8-11.

that ATSER breached the parties' contract.  **See** Filing No. 98 Answer ¶¶ 21-23.  ATSER filed a counterclaim seeking declaratory judgment and alleging breach of contract, violation of Nebraska's Trade Secrets Act, Neb. Rev. Stat. § 87-501 to 507, and unjust enrichment. *Id.* ¶¶ 35-46.

## PROCEDURAL HISTORY

Kiewit filed this action on December 30, 2008.  **See** Filing No. 1 Complaint.  On the same date, Kiewit filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking to restrain ATSER from disrupting or terminating Kiewit's access to Assure-IT.  **See** Filing No. 3.  On December 31, 2008, the court entered a temporary restraining order temporarily prohibiting ATSER from disrupting or terminating Kiewit's access to Assure-IT.  **See** Filing No. 9.

On  January 12, 2009, the court entered a preliminary injunction ordering ATSER to "facilitate the transfer of the Licensed Software and the accumulated historical data belonging to Kiewit to a server identified by Kiewit, so that it will become a self-hosted program."  **See** Filing No. 31 Memorandum and Order ¶ 3.  Additionally, the court ordered, "Kiewit [to] immediately . . . remit $6,000.00 to ATSER for maintenance and help desk services in accordance with the terms of the Software License Agreement and incorporated Proposal."  **See** *id.* ¶ 6.  Further, the court ordered:

> 7. ATSER may file, no more frequently than once each calendar month, requests for interim payments reflecting the reasonable costs it incurs in the transfer of the Licensed Software and historical data to Kiewit's server, and shall include a certificate of service demonstrating service of the request on Kiewit's counsel;
> 8. Within ten business days after Kiewit's counsel receives a request from ATSER for interim payment, Kiewit will (a) make payment of the requested sum to ATSER, which payment will not be deemed an admission of the reasonableness of the billing; or (b) file a request for hearing before this Court on the question of the reasonableness of the billing;

> 9. The terms of this Preliminary Injunction will remain in effect until July 9, 2009; or until further order of this court[.]

**See** *id.* ¶ 7-9.

ATSER submitted six invoices, which are requests for payment for the transfer of Assure-IT to a Kiewit server, spanning the period from December 19, 2008, to June 20, 2009; and six invoices, which are fees for maintenance, from January 1, 2009, to June 20, 2009. **See** Filing No. 41 Ex. 1; Filing No. 42 Ex. 1; Filing No. 62 Exs. 1 and 2; Filing No. 63 Exs. 1 and 2; Filing No. 84 Ex. 1; Filing No. 85 Ex. 1; Filing No. 107 Ex. 1; Filing No. 108 Ex. 1; Filing No. 133 Ex. 1; Filing No. 134 Ex. 1. In total, ATSER billed Kiewit for $406,445.80. **See** *id.* Invoice No. 010917034A (Invoice No. 1) billed $81,208.33 for work completed from December 19, 2008, through January 31, 2009. **See** Filing No. 41 Ex. 1. Invoice No. 020917053A (Invoice No. 2) billed $46,708.33 for work completed from February 1, 2009, through February 28, 2009. **See** Filing No. 62 Ex. 1. Invoice No. 030917053A (Invoice No. 3) billed $47,958.33 for work completed from March 1, 2009, through March 28, 2009. **See** Filing No. 62 Ex. 2. Invoice No. 040917053A (Invoice No. 4) billed $44,708.33 for work completed from March 29, 2009, through April 25, 2009. **See** Filing No. 84 Ex. 1. Invoice No. 050917053A (Invoice No. 5) billed $26,833.33 for work completed from April 26, 2009, through May 30, 2009. **See** Filing No. 107 Ex. 1. Invoice No. 060917053A (Invoice No. 6) billed $36,875.00 for work completed from May 31, 2009, through June 20, 2009. In addition, ATSER billed $122,154.15 for maintenance fees. **See** Filing No. 133 Ex. 1. Kiewit objected to the reasonableness of the fees in each of ATSER's requests and sought a hearing. **See** Filing Nos. 51, 73, 88, 109, and 135.

Generally, Kiewit argues ATSER dramatically inflated the actual time spent on transferring Assure-IT to a Kiewit server, ATSER did not provide proper documentation detailing the hours worked on the transfer of Assure-IT, and ATSER's requests for payments are unreasonably high compared to the fees Kiewit paid while under contract with ATSER. ATSER has provided time sheets which show the amount of time ATSER's employees worked on a portion of the transfer of Assure-IT. **See** Filing No. 90 Ex. 1, 3, 4, 5. The time sheets show work completed from December 19, 2008, through April 25,

2009, which covers the first three requests for payment. ATSER asserts all charges are reasonable. **See** *id.*

## ANALYSIS

**A.      Reasonableness of ATSER's Requests for Payment**

"There is little authority defining a reasonable fee. Courts have acknowledged this and have used their discretion to settle upon reasonable amounts." *New York v. Solvent Chem. Co., Inc.*, 210 F.R.D. 462, 468 (W.D.N.Y. 2002) (internal citation omitted). The court will examine cases addressing analogous fee issues, such as attorney and expert witness fees, to provide a framework to determine the reasonableness of fees in this case. "The party seeking reimbursement of . . . fees bears the burden of proving reasonableness. If the parties provide little evidence to support their interpretation of a reasonable rate, the court may use its discretion to determine a reasonable fee." *Id.* (internal citation omitted).

Similar to an expert witness, the court will consider several factors when determining what constitutes a reasonable fee for skilled services. The court will analyze the expertise needed to transfer Assure-IT; the prevailing rates for other comparably available services; the nature, quality, and complexity of Assure-IT; and any other factor likely to be of assistance to the court in determining the reasonableness of the fees. **See generally** *Massasoit v. Carter*, 227 F.R.D. 264, 265 (M.D.N.C. 2005); *Jochims v. Isuzu Motors, Ltd.*, 141 F.R.D. 493, 495-96 (S.D. Iowa 1992) (providing factors to consider reasonableness of expert witness fees). "The weight to be given any one of the factors in a particular case depends, of course, on the circumstances before the court." *Goldwater v. Postmaster Gen. of U.S.*, 136 F.R.D. 337, 340 (D. Conn. 1991). Additionally, courts have used the "lodestar" method when determining whether attorney fees are reasonable. **See** *ACLU Neb. Found. v. City of Plattsmouth*, 199 F. Supp. 2d 964, 966 (D. Neb. 2002). Under the "lodestar" method, a court will analyze the requested fees by comparing the fees to the relevant market price of the services and will evaluate whether the hours were reasonably expended. **See** *id.* Based on Kiewit's objections, the court will use the aforementioned factors to determine whether ATSER's requests are justified and reasonable.

### 1. Hourly Rate

ATSER billed Kiewit at an hourly rate of $250.  **See generally** Filing No. 41 Ex. 1. Kiewit claims the hourly rate is inflated as the rate is higher than Kiewit had been charged while under contract.  As the party seeking reimbursement for services, ATSER bears the burden of establishing the reasonableness of the hourly rate for the services provided to Kiewit.  ATSER submitted evidence that ATSER generally charges $250 per hour to clients for customization and data migration.  **See** Filing No. 89 ATSER Brief p. 3-5; Filing No. 90 Ex. 1 Vora Decl. Attachs. F & G - Client Quotes.  Kiewit failed to provide evidence suggesting a more reasonable hourly rate.  Therefore, the court finds the $250 hourly rate is reasonable.

### 2. Migration Plan

In Invoice No. 1, ATSER charged Kiewit $12,000 for the creation of a migration plan. **See** Filing No. 41 Ex. 1.  Kiewit claims the six-page transition document was mainly boilerplate, did not involve any highly technical or sophisticated concepts or analysis, and should not have taken more than 12 hours to complete.  **See** Filing No. 80 Ex. 7 Pfender Decl. ¶ 7; Filing No. 41 Ex. 2 Migration Plan p. 8-13.  In contrast, Mr. Vora, ATSER's Vice President of Systems, testified he created the migration plan in conjunction with other ATSER developers, each accounting for a different portion of the total billed time.  **See** Filing No. 90 Ex. 6 Vora Depo. p. 86-90; Filing No. 159 TR. 86.  Mr. Vora testified the plan took 48 hours to complete due to the complexity of Assure-IT and because the Kiewit transfer would be the first time ATSER transferred Assure-IT.  **See *id.*** Although ATSER has transferred other programs, none of the programs have been as complex as Assure-IT.  *Id.*  Moreover, other programs did not require the depth of research needed to determine the steps required to transfer Assure-IT.  **See *id.*** TR. 87.

According to Invoice No. 1, the migration plan was created between December 21, 2008, and January 21, 2009, and took 48 hours to complete.  **See** Filing No. 41 Ex. 1. ATSER submitted time sheets which indicate ATSER employees worked 171.5 hours from December 21, 2008, to January 21, 2009, specifically on the Kiewit transfer, which encompassed the 48 hours spent on the creation of the migration plan.  **See** Filing No. 90

Ex. 1, 3, 4, 5 ATSER employee time sheets.[2]  Although the time sheets do not indicate the specific project on which ATSER employees were working, the time sheets sufficiently show that four of ATSER's employees spent time working on the Kiewit transfer.  Kiewit has failed to show the time spent on the creation of the migration plan was unreasonable or how the migration plan could have been accomplished in a shorter period of time.  Therefore, the court finds the 48 hours and $12,000 charge are reasonable in this matter.

### 3. Transition Phases 1 through 5

In ATSER's migration plan, ATSER delineated a five-step transfer process to provide Kiewit with self-hosting capabilities.  **See** Filing No. 41 Ex. 2 - Migration Plan p. 8-13.  In the first phase of the transfer process, ATSER generated an object code version of Assure-IT from the source code and tested the object code on the test server.  *Id.* p. 9.  Moreover, ASTER developed a build script for installation of Assure-IT on a Kiewit server and continued to maintain Assure-IT utilized by Kiewit on the ATSER-hosted server.  *Id.*  Phase two involved the setup of the test server and testing Assure-IT on the test server with ATSER configurations.  *Id.* p. 10.  In phase three, ATSER transferred Assure-IT to ATSER's production server, created a copy on a DVD of the latest version of Assure-IT, and transmitted the Assure-IT DVD and database DVD to Kiewit.  *Id.* p. 11.  Phase four of the transfer required ATSER to install, configure, and test third-party software and Assure-IT on Kiewit's self-hosted server.  *Id.* p. 12.  When third-party configurations conflicted with Assure-IT, ATSER configured and tested Assure-IT against each of the third-party applications to identify incompatibilities and to suggest other third-party software to resolve the problem.  *Id.*  In the final phase of the transfer, phase five, ATSER maintained the ATSER-hosted server until Kiewit verified operational capabilities on a Kiewit self-hosted server.  *Id.* p. 13.  Finally, after verification from Kiewit, ATSER disconnected the ATSER-hosted server, performed a database dump, and transmitted all data to Kiewit.  *Id.*

In support of the work completed during phases one through five, ATSER provided time sheets that indicate the number of hours ATSER employees worked on the Kiewit

---

[2] The remaining hours billed are discussed *infra* ¶ 3(a).

transfer. **See** Filing No. 90 Exs. 1, 3, 4, 5 ATSER employee time sheets. The time sheets were kept contemporaneously with the work completed and cover the period from December 19, 2008, to April 25, 2009. **See** *id.* There exists no evidence indicating the time sheets are inaccurate due to mistake or artifice.

Kiewit contests the amount of time ATSER spent on transferring Assure-IT to the Kiewit server. Kiewit employee Mr. Pfender testified with regard to his opinion about an approximate time the transfer process phases should have taken. However, the court finds Mr. Pfender has limited experience with Assure-IT and his approximations do not refute the time sheets submitted by ATSER. The following shows the number of hours spent, according to the time sheets, on the transfer process with the reasonable amount owed by Kiewit:

    a.    The billing period for Invoice No. 1 is December 21, 2008, to January 31, 2009. According to the time sheets, 224 hours of work were dedicated to completing phase one and part of phase two. Of the 224 hours, 48 are allocated to the migration plan. Therefore, 176[3] hours are allocated to work on phase one and part of phase two. The court finds ATSER has met its burden of showing 176 hours were reasonably expended for work on phase one and part of phase two under Invoice No. 1. Accordingly, Kiewit owes $44,000 to ATSER under Invoice No. 1.

    b.    The billing period for Invoice No. 2 is February 1, 2009, to February 28, 2009. According to the time sheets, 96.5[4] hours of work were completed on parts of phases two and three. The court finds ATSER has met its burden of showing 96.5 hours were reasonably expended for work on parts of phases two and three under Invoice No. 2. Accordingly, Kiewit owes $24,125 to ATSER under Invoice No. 2.

---

[3] ATSER billed Kiewit $43,812.50 based on 175.25 hours of work, however the time sheets indicate 176 hours of work was completed. **See** Filing No. 90 Exs. 1, 3, 4, 5 - ATSER employee time sheets. The court finds the time sheets are most credible and reflect a reasonable amount of time spent.

[4] ATSER billed Kiewit $22,875 based on 91.5 hours of work, however the time sheets indicate 96.5 hours of work was completed. **See** *id.* The court finds the time sheets are most credible and reflect a reasonable amount of time spent.

8

c. The billing period for Invoice No. 3 is March 1, 2009, to March 28, 2009. According to the time sheets, 98.5 hours of work were completed on parts of phases three and four. The court finds ATSER has met its burden of showing 98.5 hours were reasonably expended for work on parts of phases three and four under Invoice No. 3. Accordingly, Kiewit owes $24,625 to ATSER under Invoice No. 3.

d. The billing period for Invoice No. 4 is March 29, 2009, to April 25, 2009. According to the time sheets, 85.5 hours of work were completed on part of phase four during this time period. The court finds ATSER has met its burden of showing 85.5 hours were reasonably expended for work on part of phase four under Invoice No. 4. Accordingly, Kiewit owes $21,375 to ATSER under Invoice No. 4.

e. In the final two invoices, Invoice Nos. 5 and 6, ATSER billed Kiewit for work completed on part of phase four and phase five. ATSER did not provide the court with any evidence to support the time billed in the invoices. The unsupported time totals 14 hours on part of phase four under Invoice No. 5 and 77.5 hours on phase five in Invoice No. 6. **See** Filing No. 107 [Ex. 1](); Filing No. 133 [Ex. 1](). However, during the hearing Kiewit agreed ATSER reasonably expended time on a database dump and for providing assistance to Kiewit in phase five. **See** [Filing No. 159]() TR. 40-41. Kiewit's employee, Mr. Pfender, testified the appropriate fee for these services is $12,500, the equivalent of 50 hours of work. Based on this evidence, the court finds ATSER reasonably expended 50 hours of work on part of phase four under Invoice Nos. 5 and 6. Accordingly, Kiewit owes $12,500 to ATSER under Invoice Nos. 5 and 6.

### 4. Hosting Services and Test Server

Based on the parties' Software Agreement, ATSER charged $2,800 per month for hosting services, plus additional fees based on server spaced used (gigabyte usage). **See** Filing No. 98 Answer Ex. 1 Software Agreement's incorporated Aug. 19, 2005 Proposal p. 5-6. For Kiewit these fees totaled $7,500 per month for hosting. **See** *id.* p. 6 ($1,500 per month for 40 gigabytes); Filing No. 90 Ex. 2 Martinez Decl. ¶ 7 (Kiewit used 200 gigabytes each month). According to Mr. Vora, hosting services included data center hosting and technical support for the production server, which encompassed annual software maintenance, third-party software maintenance, and help desk services. **See** Filing No. 159 TR. 76-77; 80-86. ATSER did not charge separately for the developmental or test server. **See** *id.* In ATSER's 2008 proposal, ATSER proposed an increase in the charge to $11,383.33 monthly for all hosting services. **See** Filing No. 80 Ex. 9 2008 Proposed Software Agreement p. 3. The 2008 proposal was based upon a new long-term contract. **See** *id.* Generally, the charge for the developmental and test server are included within the service agreement. **See** Filing No. 80 Ex. 1 Vora Depo. p. 58-61.

In ATSER's current invoices, ATSER charges Kiewit $12,500 per month for the hosting services and $10,833.33 for the test server.[5] **See generally** Filing No. 41 Ex. 1; Filing No. 133 Ex. 1. ATSER explains the fee for the host server is greater than the test server because the host server is used more frequently and requires a greater bandwidth. **See** Filing No. 90 Ex. 1 Vora Decl. ¶ 12. ATSER argues the cost for hosting services increased from the fee ATSER charged when Kiewit was under contract due to inflation and the lack of a discount associated with long-term contracts. **See** Filing No. 159 TR. 76-77; 80-86, 108. Moreover, ATSER argues the initial Software Agreement was a pilot program, and therefore less expensive for the client, Kiewit. **See** *id.*

ATSER has the burden of proof to establish that the charged fees are reasonable. The court finds that ATSER met its burden of establishing the reasonableness of fees for hosting services. Kiewit was not in a long-term contract with ATSER, service was rendered

---

[5] In the last invoice, Invoice No. 6, ATSER charged for three-quarters of a month. Therefore ATSER charged $9,375 for hosting services and $8,125 for the test server. **See** Filing No. 133.

on a month-to-month basis, and ATSER does not offer discounts to month-to-month clients. ATSER's original pricing in the Software Agreement reflected a pilot-program to allow further evaluation of the value of Assure-IT. Additionally, the current fee of $12,500 is not a large increase from the previous charge for hosting services. The court finds the $71,875 total fee for hosting services over the course of nearly six months is reasonable.

ATSER has not previously charged Kiewit separately for a test server. For ATSER to recover ATSER's billed fees for the test server ATSER must demonstrate the reasonableness of a separate fee for the test server and the reasonableness of the fee charged. ATSER has demonstrated the need for the test server and the amounts charged. **See** Filing No. 90 Ex. 1 Vora Decl. ¶ 11-12. Due to the transfer of Assure-IT, ATSER was required to setup and utilize a test server. Phase two of the migration plan was solely dedicated to setting up and utilizing the test server. On the test server, after the setup was completed, ATSER had to test Assure-IT with the required configurations. Moreover, before ATSER received the Kiewit server, ATSER was required to have a server where ATSER could test Assure-IT during the transfer process before transferring Assure-IT to the Kiewit server.

ATSER must also demonstrate the reasonableness of the fee for the test server. Although ATSER had not previously charged separately for the test server, ATSER had never transferred such complex software as Assure-IT. ATSER has demonstrated the reasonableness of using a test server. Moreover, due to the test server being used less frequently and requiring a lower bandwidth, the test server is allocated a smaller portion of the cost, as compared to the hosting server. **See** Filing No. 90 Ex. 1 Vora Decl. ¶ 11-12. ATSER's fee for the test server is $10,833.33 which covers the cost of daily tasks such as backing up tapes, checking server messages, and maintaining the server, as well as monthly tasks. **See** Filing No. 90 Ex. 1 Vora Decl. Attach. E - Server Costs. Under the circumstances, the court finds ATSER has met its burden of establishing the reasonableness of the $62,291.65 fee for the test server.

### 5. Miscellaneous Unopposed Charges

Kiewit agreed to several charges in ATSER's invoices. In Invoice No. 1, Kiewit agreed to Work Order Nos. 8, 9, and 10. **See** Filing No. 160 Kiewit Brief p. 12-14. Work Order No. 8 was a conference call between Kiewit and ATSER. **See** Filing No. 41 Ex. 1 Invoice No. 1. Work Order Nos. 9 and 10 were charges for ATSER's preparation for server specifications and a third-party licensing document. *Id.* In Invoice No. 2, Kiewit agreed to Work Order Nos. 13 and 17. **See** Filing No. 160 Kiewit closing brief p. 12-14. Work Order No. 13 was a conference call between Kiewit and ATSER and Work Order No. 17 was an email response between Kiewit and ATSER. **See** Filing No. 62 Ex. 1 Invoice No. 2. Therefore based on Kiewit's concessions, the court finds $2,562.50 is a reasonable charge for the conference call and preparation for server specification and third-party licensing document.

### 6. Maintenance Fee

On January 12, 2009, the court ordered Kiewit to remit $6,000 to ATSER for maintenance and help desk services in accordance with the terms of the Software Agreement and incorporated Proposal. **See** Filing No. 31 Memorandum and Order ¶ 6. The court left open for future determination the reasonableness of the actual maintenance and help desk service fees. ATSER provided invoices to Kiewit for these maintenance fees separate from the interim payment requests discussed above. The maintenance fee invoices exceed the original $6,000 remittance. The task of determining the reasonableness of these fees was referred to the undersigned magistrate judge on July 6, 2009. **See** Filing No. 154 July 6, 2009 hearing TR. 10. Accordingly, the undersigned magistrate will recommend changes to the originally ordered maintenance fee where reasonable.

According to the Software Agreement, ATSER charged Kiewit $39,600 per year for maintenance, the data center web server, and data center hosting and technical support, which includes help desk services. **See** Filing No. 98 Ex. 1 Software Agreement's incorporated Aug. 19, 2005 Proposal p. 6. ATSER is currently charging Kiewit $20,583.33 per month, for the same services. **See** Filing No. 42 Ex. 1; Filing No. 63 Exs. 1 and 2;

Filing No. 85 Ex. 1; Filing No. 108 Ex. 1; Filing No. 134 Ex. 1.  ATSER has the burden to show the charges are reasonable.  However, in this matter, ASTER has failed to show the court the reasonableness of the current fees.  The court previously ordered the charge for maintenance and help desk services to be in accordance with Kiewit and ATSER's Software Agreement and incorporated Proposal.  Therefore, in accordance to the contract, the fee for maintenance of the server, at a rate of $6,000 per year, for six months, is $3,000.  The fee for the data center web server, at a rate of $1,500 per month, for six months, is $9,000.  The fee for data center hosting and technical support, which includes help desk services, at a rate of $1,300 per month, for six months, is $7,800.  The court determines the contract price to be a reasonable charge.  Therefore, the court recommends $19,800 less the $6,000 Kiewit already paid to ATSER according to the court's January 12, 2009, order to be reasonable for maintenance and help desk services.

ATSER charges additional maintenance fees for vehicle usage and an update for the British Columbia Ministry of Transportation (BCMoT) program, which Kiewit contests.  ATSER charged Kiewit a total of $6,050 for vehicle usage.  **See** Filing No. 63 Exs. 1 and 2; Filing No. 85 Ex. 1; Filing No. 108 Ex. 1; Filing No. 134 Ex. 1.  However, ATSER had already incorporated a travel charge within ATSER's charge for the production server.  **See** Filing No. 90 Ex. 1 Vora Decl. Attach. E - Server Costs.  It appears ATSER may be charging Kiewit for the costs associated with renting vehicles, which the court does not find reasonably assessed against Kiewit.  ATSER has already charged Kiewit a fee for personnel time.  ATSER failed to provide evidence to the court to support the reasonableness of a fee for vehicle usage.  Therefore the court recommends the vehicle fee is not reasonable.

The BCMoT fee is for work ATSER completed by Kiewit's request.  ATSER had to update the source code to reflect the proper date on the program.  **See** Filing No. 159 TR. 108-109.  This update involved recompiling the source code, testing the new source code, making object code, and then testing the object code.  **See *id.*** Mr. Vora and another ATSER developer worked on the BCMoT update for 12 hours.  **See** Filing No. 90 Exs. 1 and 3 ATSER employee time sheets.  The hourly rate charged is $250.  The court

recommends the time and fee are reasonable and recommends Kiewit to pay $3,000 to ATSER for the BCMoT fee.

**B.     ATSER's Motion to Strike**

On July 13, 2009, ATSER filed a Motion to Strike (Filing No. 163) Kiewit's post-hearing index of evidence (Filing No. 161).  Kiewit did not respond to ATSER's motion to strike.  Kiewit filed the evidence in support of Kiewit's post-hearing brief (Filing No. 160). ATSER argues Kiewit was provided time at the evidentiary hearing on July 7, 2009, to introduce evidence and had possession of the introduced evidence before the close of evidence.  At the conclusion of the hearing, the court ordered a "brief written summary" from both parties in lieu of the closing argument (Filing No. 159 TR. 127-128).

The court agrees Kiewit was provided ample time at the hearing to introduce evidence.  Kiewit has been in possession of this information since before the hearing was held and could have introduced the evidence at the hearing.  Kiewit provides no justification for filing the evidence out of time.  Therefore, the court did not consider the late-filed evidence when determining the reasonableness of any fees and ATSER's motion to strike will be granted.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

The earlier award of "$6,000.00 to ATSER for maintenance and help desk services" be modified to require Kiewit to pay ATSER an additional sum of $13,800 for maintenance and help desk services; and a reasonable fee of $3,000 for the BCMoT update; but no additional fees related to vehicle charges.

**IT IS ORDERED:**

1.     Kiewit's objections (Filing Nos. 51, 73, 88, 109, and 135) to ATSER's requests for payment are granted in part and denied in part as set forth herein.

2.     Kiewit shall pay reasonable fees of $275,354.15 to ATSER for the transfer of Assure-IT to a Kiewit server.

3.     ATSER's Motion to Strike (Filing No. 163) is granted.

**ADMONITION**

Pursuant to NECivR 72.2 and 72.3 any appeal of this Order or objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Order and Report and Recommendation. Failure to timely appeal or object may constitute a waiver of any appeal or objection. The brief in support of any appeal or objection shall be filed at the time of filing such appeal or objection. Failure to file a brief in support of any appeal or objection may be deemed an abandonment of the appeal or objection.

DATED this 25th day of August, 2009.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge