# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **PETER KIEWIT SONS', INC., and KIEWIT CORPORATION,** ) ) ) | **CASE NO. 8:08CV541** |
| **Plaintiffs,** ) ) | |
| ) | **MEMORANDUM** |
| v. ) ) | **AND ORDER** |
| **ATSER, LP,** ) ) | |
| **Defendant.** ) | |

This matter is before the Court on Magistrate Judge Thomas D. Thalken's Order and Report and Recommendation. (Filing No. 171). Plaintiffs and Defendant have filed Statements of Appeal to the Magistrate Judge's Order and Objections to the Report and Recommendation. (Filing Nos. 178 and 181).[1]

The Court has reviewed the briefs and evidentiary submissions presented to the Magistrate Judge, as well as those filed in support of, and in opposition to, the parties' Statements of Appeal and Objections.

## STANDARD OF REVIEW

Under NECivR 72.2(a), a party may appeal a nondispositive order entered in a civil case by filing a "Statement of Appeal of Magistrate Judge's Order" within ten days after being served with the order. The party must specifically state the order or portion thereof appealed from and the basis of the appeal, and must file contemporaneously with the statement of appeal a brief setting forth the party's arguments that the magistrate judge's order is clearly erroneous or contrary to law. Unless otherwise ordered, any opposing party

---

[1] Plaintiffs initially filed a Motion to Reconsider (Filing No. 172). Judge Thalken ordered that the motion be docketed as an appeal and allowed Plaintiffs additional time to amend their motion/appeal. (Filing No. 174). Plaintiffs subsequently filed a Statement of Appeal and Objection (Filing No. 181) that appears to supercede their previous filing. Therefore, the Court will deny the previous appeal (Filing No. 172) as moot.

may file a brief opposing the appeal within ten days of being served with the statement of appeal. "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

Pursuant to NECivR 72.3(a), a party may object to a magistrate judge's recommendation in a dispositive matter by filing a "Statement of Objections to Magistrate Judge's Recommendation" within 10 days after being served with the recommendation. The party must specifically state the portions of the recommendation objected to and the basis of the objections, and may file a supportive brief or rely on a previously filed brief. The portions of the report and recommendations to which the party objects are reviewed *de novo* pursuant to 28 U.S.C. § 636(b)(1)(C). The Court may accept, reject, or modify, in whole or in part, a magistrate judge's findings or recommendations.

## BACKGROUND

The factual background and the procedural history have been set forth by the Magistrate Judge in Filing No. 171 and need not be repeated here. On March 6, 2009, the Court authorized Judge Thalken to determine the reasonableness of ATSER's requests for interim payments for the transfer of the Assure-IT software and accumulated historical data to Kiewit's server, and to rule on Kiewit's objections to those requests. (Filing No. 59). The Court gave its authorization in response to the parties' willingness to have the matter decided by Judge Thalken. The Court later requested that Judge Thalken also address the reasonableness of the fees associated with the ongoing maintenance and help desk

services that the Court required ATSER to provide to Kiewit during the transition process.[2] (*See* Filing No. 154, hearing transcript from July 6, 2009, 10:11-17). Judge Thalken held an evidentiary hearing on July 7, 2009, and allowed the parties to file briefs at the close of the presentation of evidence. In the Order and Report and Recommendation that followed, Judge Thalken thoroughly reviewed the issues relevant to ATSER's requests for interim payments (Filing Nos. 41, 62, 84, 107, 133) and Kiewit's objections to those requests (Filing Nos. 51, 73, 88, 109, 135), as well those related to the matter of reasonable fees for the ongoing maintenance and help desk services (Filing Nos. 42-2, 63-2, 63-3, 85-2, 108-2 and 134-2).

Judge Thalken found that $275,354.15 of the fees requested by ATSER for the transfer of Assure-IT to a Kiewit server was reasonable and ordered Kiewit to pay ATSER that amount. (Filing No. 171, p. 14). In determining that amount, Judge Thalken found ATSER's $250 hourly rate for the transfer to be reasonable. (*Id.* at 6). He found ATSER's charge of $12,000 for 48 hours of time associated with the creation of a migration plan to be reasonable. (*Id.* at 7). He found ATSER's collective charges of $114,125 included in Invoice Nos. 1-4, covering the period from January 1, 2009, to April 25, 2009, for the transfer of Assure-IT to the Kiewit server to be reasonable and supported by the evidence.[3] (*Id.* at 8-9). He also found that ATSER had failed to provide the Court with evidence to

---

[2]The Court previously ordered ATSER to "continue to provide maintenance and help desk services to Kiewit as provided in the initial contract and service agreement such that the system is serviceable to Kiewit." (Filing No. 31).

[3]Invoices 1-4 included transition charges in the following amounts: Invoice No. 1 - $44,000 (Filing No. 41-2); Invoice No. 2 - $24,125 (Filing No. 62-2); Invoice No. 3 - $24,625 (Filing No. 62-3); and Invoice No. 4 - $21,375 (Filing No. 84-2). (*See* Filing No. 171 at 8-9)

support the fees associated with the transfer in Invoice Nos. 5 and 6 (Filing Nos. 107-2 and 133-2) for the period of time beginning April 26, 2009, and ending June 20, 2009. (Filing No 171 at 9). Instead, Judge Thalken found fees of $12,500 for 50 hours work to be reasonable for that time period, based upon the testimony of Kiewit's employee, Scott Pfender.[4] (*Id.*). Judge Thalken also found that ATSER's fees of $71,875 for hosting services and $62,291.65 for the use of ATSER's test server from January 1, 2009, until June 20, 2009, were reasonable. (*Id.* at 11). In addition, Judge Thalken found that ATSER's fee of $2,562.50 for miscellaneous charges was reasonable. (*Id.* at 12).

With respect to the recommendations, Judge Thalken rejected ATSER's invoiced fees of $118,354.15 for software maintenance and help desk services and instead recommended that ATSER was entitled to $19,800, less the $6,000 previously paid by Kiewit pursuant to this Court's Order at the hearing on the Preliminary Injunction. Judge Thalken also recommended that ATSER's vehicle usage fee was not reasonable (*Id.* at 13). Finally, Judge Thalken recommended that ATSER's $3,000 fee for providing a software modification necessary to Kiewit's compliance with the British Columbia Ministry of Transportation's documentation requirements, referred to as the "BCMot update," was reasonable. (*Id.* at 14).

ATSER argues that "the Magistrate Judge erred in concluding that [it] did not submit evidence to support time billed in Invoices 5 and 6." (Filing No. 179, p. 4). ATSER further contends that Judge Thalken erred in recommending that the reasonable charge for

---

[4] ATSER's invoices for that time period included charges in the amount of $22,875 for the transfer of the Assure-IT to Kiewit's server; $3,500 for 14 hours on Invoice No. 5, and $19,375 for 77.5 hours on Invoice No. 6.

4

software maintenance and help desk services be based on the rates set in the expired contract.  (*Id.* at p. 6).

Kiewit argues that Judge Thalken erred in ordering it to pay $44,000 for the creation and testing of the object code in as set forth in Phase 1 of the transition.  Kiewit further argues that the Magistrate Judge's award of $71,875 for hosting services and $62,291.65 for the test server were clearly erroneous and created an internal inconsistency in the Order.

## DISCUSSION

Discussion of those portions of the Magistrate Judge's Order and Report and Recommendation not addressed in either ATSER's or Kiewit's appeal/objection is unnecessary, and the Court will limit its discussion to those issues raised by the parties.

Invoice No. 1

Kiewit argues that by ordering Kiewit to pay the $44,000 charge on Invoice No. 1 for the work completed on Phase 1 of the transition, the Magistrate Judge is requiring Kiewit to pay twice for the object code.  (Filing No. 182, p. 3-4).  Kiewit argues that it has already paid for the object code and therefore should not be required to pay for the time ATSER spent compiling and testing the object code for the purpose of the transfer.  (Filing No. 182, p. 3).[5]  The Court agrees with Judge Thalken's assessment of the reasonableness of the invoices and supporting time sheets for work performed on Phase 1 of the transfer.  Judge Thalken heard the testimony from the witnesses and found that Kiewit's employee, Mr. Pfender, "has limited experience with Assure-IT and his approximations do not refute the

---

[5]In the same paragraph of its brief, Kiewit contends that its purchase of the Assure-IT software license in August 2005 entitled Kiewit to "*use copies of the object code* of the software and to have the object code placed on a computer server."  (Filing No. 182, p. 3) (emphasis added); (*See* Filing No. 5-4, Agreement).

5

time sheets submitted by ATSER." (Filing No. 171, p. 8). Moreover, the testimony provided by Mr. Pfender, did not directly conflict with ATSER's charges with respect to the amount of time ATSER spent generating, or compiling, and testing the object code. Mr. Pfender acknowledged, upon cross-examination by ATSER's counsel, that the transfer of Assure-IT to Kiewit's server, with its minor differences in hardware and third-party software from that of the ATSER-provided server, required ATSER to recompile the object code to account for those differences. (Filing No. 159, 54:3-25).

Kiewit has failed to show that Judge Thalken's conclusions with respect to the fees associated with Phase 1 of the transfer were clearly erroneous or contrary to law.

<u>Invoice Nos. 5 and 6</u>

With respect for the Magistrate Judge's careful analysis of the numerous invoices, supporting documentation, and objections, the Court determines that the Magistrate Judge was in error with respect to his finding that ATSER failed to provide evidence to support the amount of time billed in Invoice No. 6 (Filing No. 133-2). I note that at the hearing held on July 7, 2009, Judge Thalken received Exhibit 9, which included time sheets for the period covered by Invoice No. 6 in the amount of 77.5 hours. Therefore, ATSER is entitled to the transition fees included in Invoice No. 6. No such evidentiary support was provided for Invoice No. 5, and although ATSER argues that it was generated in the same manner as the other invoices, I find that the Court was not presented with any evidence to support the 14 hours billed. Therefore, ATSER is not entitled to the fees for the transition included in Invoice No. 5.

In view of the evidence received at the hearing before Judge Thalken on July 7, 2009, the Court finds that the $12,500 previously awarded should be modified to reflect,

instead, the reasonable charges of $19,375 contained in Invoice No. 6 for that phase of the transition.

Hosting Services and Test Server

ATSER's invoices for interim payments for the transfer of the software license included charges of $71, 875 for hosting services involving ATSER's production server and separate charges of $62, 291.65 for use of ATSER's test server. Judge Thalken found that ATSER had met its burden in establishing the reasonableness of those charges and included them in the total fees awarded to ATSER for the transfer of Assure-IT to the Kiewit server.

Both parties agree that the cost associated with the hosting service increased dramatically over the costs included in the expired agreement. Further, the parties agree that ATSER did not charge separately for the test server under the expired agreement. Kiewit argues that ATSER should not be allowed to bill separately for the test server and that the fees for hosting and the use of ATSER's servers should be dictated by the rates in the expired agreement. Kiewit contends that ATSER failed to offer "*any* legitimate reason why the fees would have increased." (Fling No. 182, p. 9). I disagree. As Judge Thalken noted, the parties were no longer in a long-term contractual relationship for hosting, maintenance, or help desk services as of January 1, 2009. Therefore, Kiewit is no longer entitled to any discount that accompanies such a long-term contract or participation in a pilot-program aimed at evaluating the value of the Assure-IT program.

The Court ordered that ATSER continue to provide services as described in the contract, but clearly indicated that the Court would consider the reasonableness of the fees for those continued services. (Filing No. 31). Kiewit's arguments have failed to show that

7

Judge Thalken's conclusions with respect to hosting services and use of the test server were clearly erroneous or contrary to law.

Maintenance and Help Desk Fees

This Court previously ordered ATSER to continue to provide Kiewit with software maintenance and help desk services during the transition to self-hosting, even though the agreement between the parties for these services expired on December 31, 2008, and the parties failed to negotiate a subsequent agreement. (Filing No. 31). The Court further ordered Kiewit to pay ATSER $6,000.00 immediately toward those services, but indicated that the reasonableness of that figure would be revisited by the Court at a later date. (*Id.*).

At the time the preliminary injunction was entered, the Court anticipated that the provisions of the expired agreement would dictate the level of maintenance and help desk services that ATSER would provide to Kiewit, but not necessarily the fees associated with providing those services. Judge Thalken determined that fees for maintenance and help desk services consistent with those in the expired agreement were reasonable, and that ATSER failed to show that the fees charged in its invoices for 2009 were reasonable. (Filing No. 171, p. 13).[6]

ATSER objects to the Magistrate Judge's recommendation with respect to the maintenance and help desk fees and argues that it is entitled to $118,354.15 for those services[7] based on increased hourly rates, the fact that there is no long-term contract that

---

[6] Judge Thalken found that "[t]he court previously ordered the *charge* for maintenance and help desk services to be in accordance with Kiewit and ATSER's software Agreement and incorporated Proposal." (Fling No. 171, p. 13) (emphasis added).

[7] *See* Filing Nos. 42-1, 63-2, 63-3, 85-2, 108-2, and 134-2.

8

would entitle Kiewit to discounted rates, and similar rates offered in ATSER's current proposals for new customers.

No objection has been filed to the Magistrate's finding that ATSER is entitled to $3,000 for the BCMot update, nor the finding that ATSER is not entitled to vehicle usage fees. Accordingly, the Court will adopt the Magistrate Judge's findings in these respects.

The Court recognizes that the terms of the expired contract may provide inadequate compensation to ATSER in light of increased costs associated with providing the maintenance and help desk services. The Court further recognizes the absence of a current long-term contract between the parties. ATSER's requested fees for software maintenance and help desk services are significantly higher than those contained in the expired agreement, $98,554.14 higher for the six-month period.[8] While the Court has considered the reasonableness of those new fees separate from the terms of the expired agreement, ATSER has provided very little evidence to support those increases. ATSER argues that comparable fees have been included in proposals made to other potential customers; however, Mr. Vora testified that only one of those proposals has been accepted by the customer. (Filing No. 159, 98:5-20). The proposal accepted by the City of Baton Rouge for the license to ATSER's patented Manage-IT software bundle, consisting of Assure-IT and three other programs, includes an annual fee for annual software maintenance, help desk services, and third party hosting quoted at a discounted price of $81,000. (Filing No. 90-2, p. 31). Even the quoted list price of $156,000 is significantly

---

[8]In fact, ATSER's requested fees are $232,720.80 more than those under the expired contract considering that the fees for hosting and the test server were included in the expired agreement and have been awarded separately by Judge Thalken at ATSER's requested rate.

lower than the fees ATSER seeks to recover from Kiewit. (*Id.*). ATSER failed to provided sufficient evidence for the Court to find that ATSER's proposed increased fees were reasonable or reflected the market rate.

The Court finds ATSER's argument that the significant increase in fees was based, in part, on ATSER's experience with the level of resources required by Kiewit during the term of the expired contract similarly lacking evidentiary support. Mr. Vora defended the increase in the rates, stating that ATSER "found out it costs a lot more than [it] thought" to provide those services to Kiewit. (Filing No. 159, 86:2-6). Mr. Vora admitted that ATSER had no documentation to support the actual costs. (Id. at 86:7-9). The Court further notes that the time sheets submitted by ATSER's employees do not reflect the time spent on third party software maintenance, software maintenance for Assure-IT, or help desk services. In fact, the affidavits submitted with those time sheets specifically state that "[t]ime spent working on ordinary maintenance activities for Kiewit was not recorded on my timesheets." (Filing Nos. 90-2, ¶ 6; 90-4, ¶ 5; 90-5, ¶ 5; 90-6, ¶ 5). The software maintenance and help desk fees were charged at a flat rate, that may or may not be the standard in the industry. However, the lack of evidence to support the actual time spent providing these services to Kiewit leaves the Court unable to determine the reasonableness of ATSER's charges on an hourly basis, just as the Court is unable to determine the reasonableness of the fees on a market basis.

Accordingly, the Court will adopt Judge Thalken's recommendation with respect to the reasonable fees for maintenance and help desk services.

IT IS ORDERED:

1. The Magistrate Judge's August 25, 2009, Order (within Filing No. 171) is affirmed as modified in paragraph 5 below;

2. The Magistrate Judge's Report and Recommendation (within Filing No. 171) is adopted in its entirety;

3. Plaintiffs' Statement of Appeal and Statement of Objection (Filing No. 181) is denied;

4. Defendant's Statement of Appeal and Statement of Objection (Filing No. 178) is granted in part and denied in part;

5. Plaintiffs shall pay reasonable fees of $282,229.15 to ATSER for the costs associated with the transfer of Assure-IT to a Kiewit server, including preparation of the migration plan, transfer of Assure-IT to Kiewit server (Phases 1-5), hosting services, test server, and miscellaneous unopposed charges;

6. Plaintiffs shall pay reasonable fees of $13,600[9] to Defendant for maintenance and help desk services and $3,000 for the BCMot update, but no additional fees related to vehicle charges; and

7. Plaintiffs' Motion to Reconsider/Appeal of Magistrate Judge's Order (Filing No. 172) is denied as moot.

DATED this 18th day of November, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[9]This amount recognizes the deduction of $6,000 previously paid by Kiewit.