## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

PETER KIEWIT SONS', INC. and　　)　　　　CASE NO. 8:08CV541
KIEWIT CORPORATION,　　　　　　 )
　　　　　　　　　　　　　　　　 )
　　　　　Plaintiffs,　　　　　　 )
　　　　　　　　　　　　　　　　 )　　　　 MEMORANDUM
　　　　v.　　　　　　　　　　　 )　　　　  AND ORDER
　　　　　　　　　　　　　　　　 )
ATSER, LP,　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　 )
　　　　　Defendant.　　　　　　　)

This matter is before the Court on the Plaintiffs' Motion for Summary Judgment (Filing No. 199) and the Defendant's Motion for Partial Summary Judgment (Filing No. 201). The parties have submitted briefs (Filing Nos. 200, 203, 205, 207, 213, 214) and indexes of evidence (Filing Nos. 202, 206, 208, 215) in support of their respective positions. For the reasons set forth below, the motions will be granted in part, and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are uncontroverted unless otherwise indicated.

Plaintiffs, Peter Kiewit Sons', Inc., and its wholly owned subsidiary, Kiewit Corporation, collectively "Kiewit," comprise a large construction, engineering, and mining organization, incorporated in Delaware, with headquarters in Omaha, Nebraska. Defendant, ATSER, LP ("ATSER"), a Texas limited partnership, is an engineering services firm located in Houston, Texas.

On August 20, 2005, Peter Kiewit Sons', Inc., and ATSER entered into a Software License Agreement and Proposal ("Agreement"), whereunder ATSER agreed to provide web-based technology and software to manage and track progress and funding for Kiewit's

engineering projects, and to grant Kiewit a license to that technology. (Filing No. 5-4, p. 1. ¶ 3.1).[1]   ATSER granted Kiewit a "nonexclusive, nontransferable, fully paid up and perpetual single service license" to use the Licensed Software.  (*Id.* at ¶ 3.1).  Under the Agreement, ATSER was to provide "three (3) years of Data Center Hosting and Technical Support services." (*Id.* at 13).  The Agreement also contained a provision by which, upon request by Kiewit, the Licensed Software could be relocated to Kiewit's own server.  (*Id.* at 12).  Prior to January 1, 2008, Kiewit had paid all the fees and costs that were due under the Agreement.

Kiewit initiated this action on December 30, 2008, with the Complaint (Filing No. 1), and a Motion for Temporary Restraining Order and Preliminary Injunction seeking to restrain ATSER from disrupting or terminating Kiewit's access to the Licensed Software (Filing No. 3).  On December 31, 2008, the Court entered a temporary restraining order enjoining ATSER from "disrupting or terminating [Kiewit's] access to that certain web technology and software . . .  which . . . is the subject of the 'Software License Agreement' . . . between the parties."  (Filing No. 9).  On January 9, 2009, the parties appeared on Kiewit's Motion for Preliminary Injunction and the Court entered an Order on January 12, 2009, enjoining ATSER from disrupting or terminating Kiewit's access to the Licensed Software and ordering ATSER to facilitate the transfer of the Licensed Software and stored data to a server specified by Kiewit.  (Filing No. 31).  The Court allowed ATSER to submit

---

[1]The Software License Agreement and Proposal ("Agreement") were included in the Index of Evidence (Filing No. 5) filed in support of Kiewit's Motion for Temporary Restraining Order and Preliminary Injunction (Filing No. 3) and also in ATSER's Index of Evidence in opposition to Kiewit's motion.  (Filing No. 18).  For the sake of clarity, page references for the Agreement are to the CM/ECF pagination of Filing No. 5-4.

requests for interim payments for the reasonable costs associated with the transfer of the Licensed Software and historical data to a Kiewit server and allowed Kiewit to request a hearing with respect to the reasonableness of ATSER's requests.  (*Id.* at 4).  The interim payment issues were addressed by the Court in Filing Nos. 171 and 204.

Kiewit's remaining claim against ATSER is for breach of contract.[2]  Kiewit alleges that "ATSER breached the parties' contract by failing to relocate the license to a Kiewit server and by threatening to disrupt or terminate Kiewit's access to the web-based software and database." (Complaint, Filing No. 1 at ¶ 21).  Kiewit seeks general and consequential damages in addition to injunctive relief, specific performance, and costs.  (*Id.* at p. 5).

ATSER brought the following counterclaims against Kiewit.  First, ATSER seeks declaratory judgment with respect to several provisions of the Agreement.  (Filing No. 98, Defendant's Answer, Affirmative Defenses, and Counterclaims, p. 12, ¶ 36).  Second, ATSER claims Peter Kiewit Sons', Inc., breached the Agreement with ATSER, specifically, the confidentiality provisions of the Agreement, and that ATSER is entitled to injunctive relief in addition to damages.  (*Id.* at ¶¶ 38-39).  Third, ATSER alleges that Kiewit violated the Nebraska Trade Secrets Act, Neb. Rev. Stat. § 87–501 *et seq.*  (*Id.* at ¶¶ 41-42). Fourth, ATSER presents a claim for unjust enrichment against Kiewit.  (*Id*. at ¶¶ 44-46).

## STANDARD OF REVIEW

Summary judgment is only proper when the Court, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, determines the evidence "show[s] that there is no genuine issue

---

[2]Kiewit's second claim based on the covenant of good faith and fair dealing was dismissed by the Court.  (Filing No. 87).

3

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). "Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alitcor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party is required to demonstrate a "genuine issue of material fact" that is outcome determinative–"a dispute that might 'affect the outcome of the suit under the governing law.'" *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1030 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985)). Thus, a "genuine issue" is more than "'some metaphysical doubt as to the material facts,'" *Nitro Distrib.*, 565 F.3d at 422 (quoting *Matsushita*, 475 U.S. at 586-87), and "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment.'"  *Bloom*, 440 F.3d at 1028-29

(emphasis removed) (quoting *Anderson*, 477 U.S. at 247-48).

In other words, in deciding "a motion for summary judgment, [the] facts must be

viewed in the light most favorable to the nonmoving party only if there is a genuine dispute

as to those facts." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009).  Otherwise, where

the Court finds that "the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party"–where there is no "genuine issue for trial"–summary judgment

is appropriate.  *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv.

Co.*, 391 U.S. 253, 289 (1968)); *see also Scott v. Harris,* 550 U.S. 372 (2007).

## DISCUSSION

### Plaintiffs' Motion for Summary Judgment

Kiewit argues that no genuine issues of material fact exist with respect to ATSER's

counterclaims and that Kiewit is entitled to summary judgment on all counterclaims.

Counterclaim 1 - Declaratory Judgment

Kiewit's Motion for Summary Judgment with respect to ATSER's requests for

declaratory relief is more akin to a motion to dismiss or motion for judgment on the

pleadings.  Even accepting Kiewit's motion as one for summary judgment, Kiewit has not

met its burden of demonstrating that it is entitled to judgment in its favor as a matter of law

on ATSER's requests for declaratory relief.  Regardless, the Court will discuss each

request for declaratory relief briefly, recognizing that it is not ATSER seeking summary

judgment on the claims, but Kiewit seeking judgment in its favor, *i.e.*, dismissal of ATSER's

claims.

5

(a)    ATSER asks the Court to declare that "under the Agreement, a 'Customer Owned Company' is one in which Peter Kiewit Sons', Inc., owns a greater than fifty percent interest."   (Filing No. 98, p. 12, ¶ 36).  As Kiewit notes, and ATSER concedes, the term "Customer Owned Company" is not defined in the Agreement.  ATSER argues that "'Customer Owned Company' must logically refer to some controlling interest in the owned company" for the Agreement to serve its purpose in limiting access to the Licensed Software.  (Filing No. 205, p. 18, n. 1).

The term "Customer Owned Company" is susceptible of more than one construction. For example, it could mean a company that is wholly owned by the Customer, as is Kiewit Corporation, or one in which the Customer has a majority interest, or one in which the Customer has an undivided interest, like a partnership.  "It is well-established law that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used." *Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990).  The Court will construe "Customer Owned Company" in such a manner as to resolve any ambiguity against ATSER, the party that wrote the Agreement, chose that term, and chose not to define or restrict it.  Accordingly, the Court will apply a broad definition of "Customer Owned Company" to include companies in which the Customer, directly or indirectly, has a controlling or undivided interest.  As discussed below, genuine issues of material fact may remain as to whether the term "Customer" includes Kiewit Corporation as well as Peter Kiewit Sons', Inc.

(b)  ATSER asks the Court to declare that "neither Kiewit Corporation nor any other Peter Kiewit Sons', Inc., subsidiary has the right to grant access to the Licensed Software

6

to other entities."[3]  (Filing No. 98, p. 12, ¶ 36).  Kiewit's Motion for Summary Judgment on this issue appears to be based, at least in part, on its contention that Kiewit Corporation is a party to the Agreement and is therefore permitted to authorize certain access to other entities pursuant to paragraph 2.1 of the Agreement.[4]  As will be discussed further below, the issue of whether Kiewit Corporation is a party to the Agreement and may be regarded as the "Customer" remains unresolved.

The relevant portions of the Agreement make a distinction between access to the Licensed Software (permissible only for the Customer and Customer Owned Companies), and access to *data* through the *use* of the Licensed Software (permissible for employees, agents, independent contractors, consultants, and other persons or entities authorized by the Customer).  It does not appear that ATSER is contesting Kiewit's right to allow certain third parties to have access to *data* through the *use* of the Licensed Software, but only access to the Licensed Software itself.

(c) & (d)   ATSER asks the Court to declare that "the annual maintenance contemplated by Phase 3 includes only operating system upgrades to the third party software used in conjunction with the Licensed Software" and that "the annual maintenance contemplated by Phase 3 is not a perpetual obligation by ATSER."  (Filing No. 98, p. 12, ¶ 36).

---

[3]The Agreement provides that the "Customer may allow use and access to the licensed software to any of its Customer Owned Company's [sic]."  (Filing No. 5-4, ¶ 3.2(d)).

[4]Paragraph 2.1 of the Agreement includes the following definition of the term, "Authorized User": "An employee, agent, independent contractor or consultant of Customer or any other person or entity that is authorized by Customer to access data through use of the Licensed Software. . . ."  (Filing No. 5-4, p. 1, ¶ 2.1).

Kiewit argues that these claims should be dismissed as a matter of law, because they are "simply affirmative defenses to the key allegations in Kiewit's Complaint, and do not suffice as distinct bases for a counterclaim." (Filing No. 200, pp. 19-20). Kiewit further argues that "Count I, ¶36(c) and (d) of ATSER's declaratory judgment claim relating to the scope of the maintenance obligations under the Agreement are factually and legally identical to ATSER's affirmative defenses (ECF 98, Affirmative Defenses at ¶5)." (*Id.* at p. 20). In response, ATSER argues that the allegations are properly asserted as counterclaims and that they are beyond the scope of the remaining claim as pled in the Complaint. (Filing No. 205, pp. 34-35). Kiewit has not met its burden of demonstrating that it is entitled to judgment as a matter of law on these claims.

Accordingly, Kiewit's Motion for Summary Judgment on ATSER's requests for declaratory relief will be denied.

<u>Counterclaim 2 - Breach of Contract</u>

ATSER claims that "Peter Kiewit Sons', Inc., has materially breached the Agreement and has proximately caused damages to ATSER in an amount to be proven at trial." (Filing No. 98, p. 12, ¶ 38). ATSER further claims that Peter Kiewit Sons', Inc.'s breach of the confidentiality provisions of the Agreement, found at paragraph 6.1, entitles ATSER to injunctive relief pursuant to paragraph 6.2. (*Id.* at ¶ 39). ATSER bases its breach-of-contract claim on its allegation that "Peter Kiewit and Kiewit Corporation have granted access to the Licensed Software to third parties" and that Peter Kiewit Sons', Inc., does not own a greater than fifty percent interest in all the third parties. (*Id.* at p. 9, ¶¶ 17, 18).

Kiewit argues that the Agreement permits "any Kiewit entity, its employees, agents, independent contractors, or consultants to utilize the licensed software." (Filing No. 200,

p. 12).  Kiewit further contends that ATSER has failed to adduce any evidence that Kiewit breached the Agreement.  (*Id.* at 15).  In response, ATSER contends that while the Agreement permits Peter Kiewit Sons', Inc., to "allow use and access to the licensed software to any of its Customer Owned Company's [sic]," documentation from Kiewit identifies third parties, outside the Kiewit corporate family, that have been given access to the Licensed Software.  (Filing Nos. 205, p. 21; 206-21, Exhibit 1.T).

As noted above, the Agreement allows the "Customer" and "Customer Owned Companies" access to the Licensed Software, and allows certain third parties access to *data* through the *use* of the Licensed Software.  Genuine issues of material fact remain as to whether Kiewit has allowed third parties who are not Customer Owned Companies to have access to the Licensed Software itself.

Accordingly, Kiewit's Motion for Summary Judgment on ATSER's breach-of-contract claim will be denied.

Counterclaim 3 - Trade Secrets Act Violation

ATSER claims that Kiewit misappropriated ATSER's trade secrets in violation of the Nebraska Trade Secrets Act, Neb. Rev. Stat. § 87-501, *et seq.*, and that ATSER is entitled to injunctive relief and damages.  (Filing No. 98, p. 13, ¶¶ 41-42).  In support of this claim, ATSER alleges that "Peter Kiewit and Kiewit Corporation have granted access to the Licensed Software to third parties" and that Peter Kiewit Sons', Inc., does not own a greater than fifty percent interest in all the third parties.  (*Id.* at p. 9, ¶¶ 17, 18).

Kiewit argues that ATSER is estopped from bringing a counterclaim under the Nebraska Trade Secrets Act.  (Filing No. 200, p. 17).  Kiewit points to the Agreement, under the heading "Governing Law," stating, "This Agreement shall be construed and

9

enforced in accordance with the substantive laws of the State of Texas." (Agreement, Filing No. 5-4, p. 6, ¶ 11.5). Kiewit also notes the Court's previous dismissal of Kiewit's "breach of the covenant of good faith and fair dealing" claim on the basis that Texas common law did not recognize that cause of action. (*See* Filing No. 87). Kiewit contends that substitution of Texas common law for the Nebraska Trade Secrets Act would not be practicable due to the difference in the two states' laws. (Filing No. 200, p. 17). Kiewit argues for dismissal of the counterclaim as a matter of law.[5] (*Id.*)

In response, ATSER suggests that a summary judgment motion is not the correct vehicle for the relief sought by Kiewit, and that the time for filing a motion to dismiss has passed. (Filing No. 205, pp. 23-24). ATSER further attacks Kiewit's motion on the merits by presenting the following three-pronged argument:

> (1) Nebraska law applies to this tort counterclaim; (2) Kiewit Corporation is not a party to the Agreement and, therefore, it cannot seek to enforce the choice of law provision contained in the Agreement; and (3) even if the Court determines that Texas law applies, Texas recognizes a cause of action for misappropriation of trade secrets.

(Filing No. 205, p. 24).

### (1)  *Application of Nebraska or Texas Law*

ATSER contends that the choice-of-law provision in the Agreement does not apply to its trade secret violation claim against Kiewit, because the claim sounds in tort. Citing *Inacom Corp. v. Sears, Roebuck and Co.*, 254 F.3d 683 (8th Cir. 2001), ATSER argues that the trade secret violation claim is governed by Nebraska law under Nebraska's conflict of law rules.

---

[5]Kiewit cites no case law in support of its position, and does not discuss the case law cited by ATSER with respect to this claim.

In *Inacom*, the parties entered into a written agreement for the plaintiff's purchase of the defendant's business division. The agreement included the following provision: "Agreement shall be governed by and construed in accordance with the law of the State of Illinois, as applied to contracts made and to be performed solely within such state, without regard to conflict or choice of law rules, provisions or principles." *Id.* at 687. The plaintiff subsequently brought suit against the defendant claiming fraudulent concealment, fraudulent misrepresentation, and breach of contract. The district court found that the choice of law provision did not extend to the tort claims and instructed the jury in reference to Nebraska law on those claims. *Id.* The jury found for the plaintiff on the breach-of-contract and fraudulent concealment claims and awarded damages. *Id.* at 685. In affirming the decision of the district court, the Eighth Circuit Court of Appeals noted that Nebraska follows the Restatement (Second) of Conflict of Laws which states: "[t]he law of the state chosen by the parties to govern their *contractual rights and duties* will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." *Id.* at 687 (emphasis added; quoting Restatement (Second) of Conflict of Laws § 187(1)). The Court further held that the fraudulent concealment claim was not so intertwined with the contract claim as to fall within the scope of the contract's election of law provision. *Id.* at 687. "While this provision adequately covers disputes concerning how to construe the [contract], the language is not broad enough to govern the choice of law for the fraudulent concealment claim, which sounds in tort." *Id.* at 687.

11

In an earlier decision involving Minnesota law, the Eighth Circuit Court came to a different conclusion when determining whether a contract's choice of law provision applied to tort claims.  *Northwest Airlines, Inc. v. Astraea Aviation Servs.*, Inc. 111 F.3d 1386 (8th Cir. 1997).   In *Astraea*, the parties entered into several contracts under which the defendant provided routine maintenance and refurbishing of the plaintiff's aircraft.   The contracts contained choice of law provisions with the following language, "This Agreement shall be deemed entered into within and shall be governed by and interpreted in accordance with the laws of the State of Minnesota."  *Id.* at 1392.   The plaintiff subsequently brought a breach-of-contract action and the defendant brought counterclaims including contract and tort claims.   The Eighth Circuit Court found that the choice of law provision applied to the defendant's counterclaims for negligent performance, misrepresentation, deceptive trade practices and unjust enrichment, because those claims were "closely related to the interpretation of the contracts and fall within the ambit of the express agreement that the contract would be governed by Minnesota law."  *Id.* at 1392.

ATSER attempts to distinguish *Astraea* from the case now before the Court, noting that decision in *Astraea* was based on the application of Minnesota law which does not follow the Restatement (Second) of Conflict of Laws.  (Filing No. 205, p. 27).  This Court finds no significance in that distinction.   Under Nebraska law and the reasoning of the Eighth Circuit Court in *Inacom*, the first inquiry is whether the issue forming the basis of the tort claim "is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."  Restatement (Second) of Conflict of Laws § 187(1).  The second inquiry is whether the tort claim is sufficiently intertwined with the contract

claim or the interpretation of the contract.   In the matter of ATSER's claim for misappropriation of a trade secret, the answer to each inquiry is "yes," and further analysis of other provisions of the Restatement (Second) of Conflict of Laws, is unnecessary.[6]

The contract language and tort claim in *Inacom* were different from those currently before this Court.  First, the choice of law provision in *Inacom* was narrow, providing that "the Agreement shall be governed by and construed in accordance with the law of the State of Illinois, *as applied to contracts*."  *Inacom*, 254 F.3d at 687 (emphasis added); *see also Florida State Bd. of Admin. v. Law Eng'g and Envtl. Servs.*, Inc., 262 F. Supp. 1004, 1013 (D. Minn. 2003).  The Agreement between Kiewit and ATSER has no such limiting language.  Second, the tort claims in *Inacom* were related to contract formation issues, not a performance issue – the root of ATSER's trade secret claim.

The contract language and claims considered by the *Astraea* Court are more akin to the language of the Agreement and the claims currently before this Court.  Specifically, the counterclaim for misappropriation of a trade secret is closely related to the contractual relationship between Kiewit and ATSER.  Facts alleged by ATSER in support of its trade secret claim are the same as those alleged in support of its breach-of-contract claim.  (*See* Filing No. 98, pp. 8-9).  As such, the allegations supporting the counterclaim are intertwined with issues of the parties' intentions and the meaning of terms used in the Software License Agreement, including "use," "access," "internal business use," "corporate-wide," "authorized user," and "customer owned company."  (*See* Agreement, Filing No. 5-

---

[6]Based on its reliance on *Inacom*, ATSER discusses application of the "most significant relationship" test found in the Restatement (Second) of Conflict of Laws § 145, to determine which states' law should be applied.

13

4).  The decision in *Astraea*, rather than that in *Inacom*, governs this case.  Accordingly, the Agreement's choice of law provision encompasses ATSER's counterclaim for misappropriation of a trade secret, and Texas law governs that claim.

> (2) *Kiewit Corporation's Status as a Party to the Agreement*

The Court recognizes that the choice of law provision binds only parties to the Agreement.  As discussed later in this Memorandum and Order, genuine issues of material fact remain with respect to Kiewit Corporation's status as a party to the Agreement or as a third party beneficiary.  If it is determined that Kiewit Corporation is *not* a party to the Agreement, nor a third party beneficiary, then ATSER's counterclaim against Kiewit Corporation for alleged misappropriation of trade secrets may proceed under the Nebraska Trade Secrets Act.

> (3)  *Substitution of Texas Law*

ATSER argues that "even if Texas law applies instead of Nebraska law, the Court would simply apply Texas law, which recognizes misappropriation of trade secrets as a valid cause of action."  (Filing No. 205, p. 29).

> A trade secret misappropriation in Texas requires: (a) the existence of a trade secret; (b) a breach of a confidential relationship or improper discovery of the trade secret; (c) use of the trade secret; and (d) damages.  *Hurst v. Hughes Tool Co.,* 634 F.2d 895, 896 (5th Cir.), *cert. denied,* 454 U.S. 829, 102 S. Ct. 123, 70 L. Ed. 2d 105 (1981).  A trade secret is any formula, pattern, device or compilation of information used in one's business, and which gives an opportunity to obtain an advantage over competitors who do not know or use it. *Hyde Corp. v. Huffines,* 158 Tex. 566, 586, 314 S.W.2d 763, 776 (adopting Restatement of Torts § 757 (1939)), *cert. denied,* 358 U.S. 898, 79 S. Ct. 223, 3 L. Ed. 2d 148 (1958).

*Taco Cabana Intern., Inc. v. Two Pesos, Inc.*, 932 F.2d 113, 1123 (5th Cir. 1991).

Kiewit argues that the Court cannot substitute Texas common law for Nebraska's Trade Secrets Act because Nebraska's law is "far more complicated and complex." (Filing No. 200, p. 17). The Court disagrees with the assertion that Texas law cannot be applied. The Court will grant Kiewit's Motion for Summary Judgment with respect to ATSER's counterclaim against Peter Kiewit Sons', Inc., for misappropriation of trade secrets in violation of the Nebraska Trade Secrets Act, but the claim will proceed under the law of the State of Texas.

Counterclaim 4 - Unjust Enrichment

ATSER alleges that since December 31, 2008, it has provided Kiewit with "maintenance, technical support, help desk and some customization services" in addition to services associated with the transfer of the Licensed Software to a Kiewit server. (Answer, Affirmative Defenses, and Counterclaims, Filing No. 98, p. 11, ¶¶ 32-33). ATSER further alleges that "Kiewit has paid only $6,000 to ATSER pursuant to the Court's order of January 12, 2009," and has made no payment for the services associated with the transition of the Licensed Software to the Kiewit server. (*Id.* at ¶¶ 31, 34).

Kiewit asks that ATSER's unjust enrichment claim "be dismissed as a matter of law as no genuine issue of material fact exists concerning fees or costs incurred after January 1, 2009, as they are subject to the previous Orders of this Court and thus ATSER is estopped from claiming additional costs or attempting to recover more than once for the same fees for services rendered." (Filing No. 200, p. 19).[7] ATSER argues that Kiewit's

---

[7]The Court notes that ATSER asserted its counterclaims before the entry of the Court's Order dated November 18, 2009; however, in its responsive brief filed on November 23, 2009, ATSER contends that it has not yet been paid by Kiewit for the

"request for dismissal is wholly inappropriate and untimely"[8] and that "to the extent the Court is inclined to award summary judgment, [Kiewit's] admissions dictate that judgment should be granted in favor of ATSER, not [Kiewit]."  (Filing No. 205, pp. 31-32).

These matters were addressed in the Court's Order (Filing No. 31) that allowed ATSER to submit invoices for interim payments and Kiewit to file objections to those invoices. The reasonableness of those invoices and the Plaintiffs' objections were addressed by the magistrate judge as agreed by the parties.  (Filing Nos. 59 and 171). Moreover, this Court ruled on the parties' appeals and objections to the magistrate judge's Order and Report and Recommendation.  (Filing No. 204).

This Court ordered the following:

   5.   Plaintiffs shall pay reasonable fees of $282,229.15 to ATSER for the costs  associated with the transfer of Assure-IT to a Kiewit server, including preparation of the migration plan, transfer of Assure-IT to Kiewit server (Phases 1-5), hosting services, test server, and miscellaneous unopposed charges;

   6.   Plaintiffs shall pay reasonable fees of $13,600 to Defendant for maintenance and help desk services and $3,000 for the BCMot update, but no additional fees related to vehicle charges;

(Filing No. 204, p. 11 (footnote omitted)).

It is unclear whether ATSER is seeking an award on this claim from a jury, in excess of the amount previously awarded by the Court, or whether ATSER is simply seeking a

_____

services that were the subject of the Court's Order.  (Filing No. 205, p. 31).

   [8]ATSER argues that Kiewit is "confusing a motion to dismiss with a motion for summary judgment by requesting that the court dismiss the unjust enrichment counterclaim . . . ."  (Filing No. 205, p. 31).

final judgment and award of prejudgment and post-judgment interest.[9]  While the Court will

deny Kiewit's Motion for Summary Judgment on this claim, ATSER is precluded from

recovering from Kiewit any additional fees for services provided to Kiewit after December

31, 2008, that were the subject of previous orders of this Court (Filing Nos. 171 and 204).[10]

**Defendant's Motion for Partial Summary Judgment**

Kiewit Corporation

"Under Texas law . . . a plaintiff must be a party to a contract to have standing to sue

for breach of that contract."  *Vara-Portofino Tech Ctr. L.L.C. v. Sandvik Mining and Constr.*

*USA*, 2009 WL 4263975 at *4 (S.D. Tex.).

> In order to maintain an action to recover damages flowing from the breach
> of a written agreement, there must ordinarily be a privity existing between the
> party damaged and the party sought to be held liable for the repudiation of
> the agreement. "A well defined exception to the general rule thus stated is
> that one who is not privy to the written agreement may demonstrate
> satisfactorily that the contract was actually made for his benefit and that the
> contracting parties intended that he benefit by it so that he becomes a third-
> party beneficiary and eligible to bring an action on such agreement."

*Boy Scouts of America v. Responsive Terminal Systems, Inc.*, 790 S.W.2d 738, 747 (Tex.

App., Dallas 1990) (quoting *Republic Nat. Bank of Dallas v. National Bankers Life Ins. Co.*,

427 S.W.2d 76, 79 (Tex. Civ. App. 1968)).

---

[9]In its brief opposing Kiewit's summary judgment motion, ATSER states that
"ATSER has proven each element of its counterclaim and is entitled to a final judgment
awarding it the full amount of relief to which it is entitled, including any prejudgment and
post-judgment interest allowed by law."  (Filing No. 205, p. 32).

[10]ATSER's possible claim for prejudgment and post-judgment interest was not
discussed in the parties' briefs and will not be addressed by the Court at this time.

ATSER contends that Kiewit Corporation is not a party to the Agreement and, therefore, ATSER is entitled to summary judgment on Kiewit Corporation's breach-of-contract claim. (Filing No. 203, p. 5). ATSER argues that in the first paragraph of the Agreement, Peter Kiewit Sons', Inc., is identified as the only "Customer" entering into the Agreement with ATSER. (*Id.*). ATSER notes that Kiewit Corporation is not mentioned anywhere in the Agreement or the accompanying Proposal. (*Id.*). ATSER further argues that Kiewit Corporation does not qualify as a third party beneficiary to the Agreement under Texas law because the Agreement "contains no indication that the parties intended that Kiewit Corporation be a third party beneficiary." (*Id.* at 6).

In response, Kiewit contends that the language in the Agreement permitting the "Customer" to grant its "Customer Owned Company's [sic]" access to the Licensed Software raises a genuine issue of material fact with respect to Kiewit Corporation's status as a party to the Agreement. (Filing No. 207, p. 4). Kiewit asserts that, as a wholly owned subsidiary of Peter Kiewit Sons', Inc., Kiewit Corporation is a real party in interest. (*Id.*).

Kiewit offers the affidavit of Larry J. Cochran, Vice President of Quality for Kiewit Corporation. (Cochran affidavit, Filing No. 208-1). Cochran's signature appears on the Agreement as "Customer". (Filing No. 5-4 p. 7). According to Cochran, he signed the Agreement "in [his] capacity as Vice President of Quality and as an employee and agent of Kiewit Corporation" and further that he executed the Agreement "on behalf of Peter Kiewit Sons', Inc. and Kiewit Corporation." (Cochrane affidavit, Filing No. 208-1, ¶ 3). According to Cochran, "Peter Kiewit Sons', Inc. conducts the entirety of its operations through Kiewit Corporation." (*Id.* at ¶ 4). Cochran further states that "[a]ll payments made

18

to ATSER for the software license and maintenance fees and any other charges under the agreement were made by Kiewit Corporation." (*Id.* at ¶ 5).

Kiewit further contends that ATSER has failed to show the absence of a genuine issue of material fact with respect to Kiewit Corporation's possible status as a third party beneficiary. Kiewit argues that the language of the Agreement "explicitly provides that the parties intended the web-based software to be accessed 'corporate-wide' by Peter Kiewit Sons', Inc. and its subsidiary companies." (Filing No. 207, p. 5). Kiewit directs the Court's attention to a reference in the Agreement to Peter Kiewit Sons', Inc.'s 19 districts that will have access to an Electronic Quality Management System developed by ATSER and "powered by ATSER's Assure-IT™ web-based database engine . . . ." (Filing No. 5-4, p. 10).

Construing the facts in a light most favorable to the nonmoving party, as the Court must at this stage of the proceedings, the Court finds that Kiewit has presented genuine issues of material fact with respect to Kiewit Corporation's status as either a contracting party to the Agreement or as a third party beneficiary with the capacity to bring a breach-of-contract claim. Accordingly, ATSER's motion for partial summary judgment will be denied on this issue.

Damages

ATSER contends that it is "entitled to an award of partial summary judgment to limit potential damages to those permitted under the Software License Agreement." (Filing No. 203, p. 9). Specifically, ATSER argues that the Agreement expressly limits the damages sought by Kiewit to $30,000, the amount of the license fee paid under the Agreement. (*Id.*

19

at 8). Kiewit argues that the limitation on damages relied upon by ATSER applies only to warranty damages and that the Agreement places no such limitation on the direct damages sought in the Complaint. (Filing No. 207. p. 7).

The relevant portions of the Agreement provide as follows:

**7.     Warranties and Remedies.**

. . .

7.4   <u>Remedies</u>

. . .

(b)     Subject to paragraph 9, the remedy in this section 7.4 is exclusive and is in lieu of all liabilities or obligations under this agreement, including, without limitation, all liabilities of obligations arising out of or in connection with the delivery, use or performance of the licensed software or in connection with any services provided under this agreement or any breach of this agreement. Subject to paragraph 9, the liability of developer (or its officers, owners or employees) to customer arising out of or related to this agreement, (whether based on an action or claim in contract, negligence, strict liability, tort or warranty), shall not exceed the license fee paid hereunder.

**8.     Exclusion of Consequential or Incidental Damages.**

In no event whatsoever shall Developer or Customer or their respective, officers, directors, shareholders, agents or employees be liable for consequential, incidental, indirect, or special damages, including but not limited to lost profits, lost revenue, lost data, other commercial or economic loss of any kind even if the Developer or the Customer has been advised of the possibility of such damages.

(Filing No. 5-4, p. 4-5)**.**

In construing a written contract, the Court must determine the parties' intentions "as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (citations omitted).

To achieve this objective, courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the

20

contract so that none will be rendered meaningless.  No single provision taken alone will be given controlling effect; rather all the provisions must be considered with reference to the whole instrument.  In harmonizing these provisions, terms stated earlier in an agreement must be favored over subsequent terms.

*Id.* (internal citations omitted).

In opposing ATSER's motion, Kiewit argues that paragraph 7.4 of the Agreement applies only to damages for breach of warranty and that to interpret the language of paragraph 7.4 as applying to all damages,  would render paragraph 8 meaningless.  (Filing No. 207, pp. 7-8).  The Court disagrees.  The plain meaning of the language used in paragraph 7.4 limits ATSER's liability "arising out of or related to this agreement" to the amount of the license fee, regardless of the nature of the claim.  (Filing No. 5-4, p. 5, ¶ 7.4(b)).  Paragraph 8 exempts the parties to the Agreement from liability for "consequential, incidental, indirect, or special damages."   The two provisions create no internal inconsistencies.

Under the Agreement, ATSER's potential liability on Kiewit's breach-of-contract claim is limited to $30,000, the amount of the license fee.  Moreover, the Agreement precludes Kiewit from making a claim for consequential damages.  Accordingly, the Court concludes that ATSER's motion for partial summary judgment should be granted on this issue.

IT IS ORDERED:

1.    The Motion for Summary Judgment (Filing No. 199) submitted by Plaintiffs
       Peter Kiewit Sons', Inc., and Kiewit Corporation, is granted with respect to
       Defendant ATSER, LP's claim against Peter Kiewit Sons', Inc., for alleged

21

misappropriation of trade secrets in violation of the Nebraska Trade Secrets Act, but that claim will proceed under the law of the State of Texas;

2.      The Motion for Summary Judgment (Filing No. 201) submitted by Defendant ATSER, LP, is granted with respect to the limitation on Plaintiffs' damages, *i.e.*, $30,000; and

3.      The Motions are denied in all other respects.

DATED this 22nd day of January, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

22