## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PETER KIEWIT SONS' INC. and KIEWIT CORPORATION, | ) ) ) | CASE NO. 8:08CV541 |
| Plaintiffs, | ) ) | ORDER ON MOTIONS IN LIMINE |
| v. | ) ) | |
| ATSER, LP, | ) ) | |
| Defendant. | ) | |

This matter is before the Court on the Motion in Limine (Filing No. 258) submitted by Defendant ATSER, LP (ATSER), and Motions in Limine Numbers 1, 2, 3, 4, and 5 (Filing Nos. 261, 264, 267, 270, 273) submitted by Plaintiffs Peter Kiewit Sons' Inc. and Kiewit Corporation (collectively Kiewit).

### *ATSER's Motion in Limine*

ATSER's seeks to preclude Kiewit from referring to or offering evidence regarding (1) unrelated Texas litigation, (2) damages, (3) escrow agreements, (4) trade usage, and (5) settlement discussions.

#### *1. Texas Litigation*

ATSER seeks to prevent Kiewit from introducing evidence related to litigation in a United States District Court in Texas between ATSER Research Technologies, Inc., and Raba-Kistner Infrastructure, Inc., and involving "a patent for some of the technology used in the Assure-IT™ 5.0 software." (Filing No. 259 at 1). ATSER argues that the evidence, which may include testimony and exhibits, is immaterial and irrelevant to the matters before this Court. ATSER further argues that in the event the Court finds it relevant, any evidence related to the Texas litigation should be excluded "because the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury." (*Id*. at 2).  Moreover, ATSER contends that the documents

related to the Texas litigation that Kiewit has selected for inclusion on its exhibit list "serve

no purpose beyond attempting to taint Defendant in the eyes of the jury."

Kiewit argues that the evidence is necessary to its effort to defend against ATSER's

claim for misappropriation of trade secrets.  Specifically, Kiewit seeks to use the evidence

to oppose ATSER's contention that the purported confidential material or trade secrets

have not been publicly disclosed and that ATSER took reasonable steps to protect their

secrecy.  Kiewit contends that "[i]n 2004, ATSER sought and received patent protection of

the Assure-IT software" and that "[t]he issuance of U.S. Patent No. 6,826,498

demonstrates the loss of secrecy in the most public fashion."  (Filing No. 288 at 2).

The Court finds that any probative value of the Texas litigation is outweighed by the

unfair prejudicial effect that such evidence would likely have on a jury.  It is recognized that

Kiewit may offer other evidence at trial regarding ATSER's patent and the alleged loss of

secrecy involved with the patent process, and regarding permission allegedly given by

ATSER to third parties for the use of Assure-IT without execution of non-disclosure

agreements.  With respect to any such evidence, the Court will address any objections

raised at the time the evidence is offered.

### 2.  Damages

ATSER seeks to prevent Kiewit from offering or referring to evidence of damages.

ATSER contends that Kiewit is claiming damages that do not "flow from the breach of

contract claim they pled."  (Filing No. 259 at 3).  ATSER argues that Kiewit's Complaint

(Filing No. 1) alleges a very narrow breach-of-contract claim, limited to ATSER's alleged

failure to relocate the Licensed Software to a Kiewit server, and ATSER's alleged threat

to disrupt or terminate Kiewit's access to the web-based software and database.  ATSER further argues that evidence with respect to Kiewit's damages should be excluded because such damages are speculative, and that Kiewit should be precluded from offering evidence of damages in excess of $30,000.

This Court concludes that the breach-of-contract allegations in Kiewit's Complaint were sufficiently broad to encompass the failure-to-maintain issue, and that ATSER had notice of this claim from the earliest stages of this litigation.  (*See* Filing No. 87 pt 7-8, Memorandum and Order on Defendant's Motion to Dismiss).  Kiewit will not be precluded from proceeding on its claim as set forth in paragraph 13 of the Pretrial Order's Controverted and Unresolved Issues.  The Court will deny ATSER's motion in limine with respect to its request to preclude Kiewit from offering evidence of its alleged damages, without prejudice, and will address any objections made to such evidence, if and when it is offered at trial

### 3.  *Escrow Agreement* and  *4.  Trade Usage*

ATSER asks the Court to preclude Kiewit from offering any evidence of, or referring to, Kiewit's position that ATSER has violated its contract with Kiewit by failing to enter into a source code escrow agreement.  ATSER asserts that "[w]hether or not ATSER is obligated to enter into a source code escrow agreement is not the subject of any claim asserted in this case."  (ATSER's Brief, Filing No. 259, p. 7).  The Pretrial Order (Filing No. 278) includes among the "Controverted and Unresolved Issues" the question of whether ATSER is required to place the source code in an escrow account as set forth in the parties' Agreement, ¶ 3.3, and the question of whether Kiewit's contract claim extends to

3

a claim of breach for failure to enter into a source code escrow agreement.  (Filing No. 278,

¶¶ 2, 14).

This Court addressed the question of whether Kiewit was entitled to injunctive relief

with respect to the source code escrow provision in the Memorandum and Order of July

10, 2009.  (Filing No. 158).  While the Court declined to grant the injunctive relief that

Kiewit sought, the Court said:

> Kiewit has demanded a jury trial, and it will certainly have the opportunity to
> present evidence to persuade the finders of fact that usage of source code
> escrow agreements in the trade applicable to this dispute should supplement
> the terms of the License Agreement and mandate ATSER's transfer of the
> source codes into escrow.  The limited evidence before the Court at this
> preliminary stage of the proceedings does not lead the Court to that
> conclusion.

Filing No. 158, p. 6.

The breach-of-contract allegations in Kiewit's Complaint are sufficiently broad to

encompass the source code escrow issue, and ATSER had notice of this claim from the

earliest stages of the litigation.  Kiewit will not be precluded from proceeding on its claim

as set forth in paragraph 2 of the Pretrial Order's Controverted and Unresolved Issues.

ATSER argues that Kiewit should not be permitted to offer evidence of trade usage

in connection with the source code escrow claim, because (1) it did not designate experts

to testify on that subject, (2) it has not presented any evidence that the phrase "standard

source code escrow agreement" is a term so common and universal in the industry that the

parties can be said to have contracted with one intent, and (3) trade usage cannot alter the

existing contractual language.

ATSER acknowledges, however, that under Texas law trade usage may be

established through reference materials.  Kiewit will not be precluded, in limine, from

offering evidence of trade usage with respect to the term "standard source code escrow agreement."   A special interrogatory can be fashioned, if necessary, for the jury to determine whether such trade usage supplements the terms of the License Agreement. It then will be the Court's responsibility to construe the contract to determine whether ATSER's failure to place the source codes in escrow was a breach of the contract and whether injunctive relief should be ordered.  If a breach of the contract with respect to the source code escrow provision is found, the jury may determine Kiewit's damages, if any, subject to the $30,000 limitation.  (See Memorandum and Order, Filing No. 225, p. 21).

### 5.  Settlement Discussions

Kiewit agrees that Federal Rule of Evidence 408(a) generally provides that evidence of settlement discussions is inadmissible at trial.  Accordingly, ATSER's motion in limine, seeking to preclude Kiewit from offering evidence of, or making reference to, settlement negotiations between the parties will be granted.

### Kiewit's Motions in Limine

Kiewit seeks to preclude ATSER from referring to or offering evidence regarding (1) damages, (2) misappropriation of trade secrets, (3) breach of contract, (4) undisclosed witnesses, or witnesses or evidence relating to the City of Houston Metro Light Rail Project, and (5) payment made by Kiewit to ATSER for services rendered on and after January 1, 2009.

### 1.  Damages

Kiewit seeks to prevent ATSER from introducing evidence or making argument with respect to ATSER's alleged damages.  (Filing No. 261).  Kiewit argues that the damages sought by ATSER for its breach-of-contract and misappropriation-of-trade secret claims

fall under the Agreement's prohibition against the recovery of consequential damages by either the Developer or Customer.[1]  Kiewit contends that ATSER seeks only "lost revenue or lost profits for the licenses it claims it would have sold but for Kiewit's actions" and that "lost revenue and lost profits are, by definition, 'consequential damages'" under the Agreement.   (Filing No 262 at 2).

In response, ATSER does not dispute that the Agreement precludes recovery for consequential damages.  Rather, ATSER contends that the damages it seeks to recover are not consequential damages, and as such, are not precluded by the Agreement. ATSER further contends that the question of whether the damages it seeks are direct or consequential damages is an issue for the jury.

The Court concludes that Kiewit's suggested reading of Paragraph 8 of the Agreement is overly narrow and would preclude the recovery of any economic loss.  The Court rejects Kiewit's characterization of all lost profits or lost revenue as "consequential damages" under the Agreement.  Instead, the Court finds that the terms "lost profits, lost revenue, lost data, other commercial or economic loss of any kind" are used in Paragraph 8 to illustrate examples of "consequential, incidental, indirect, or special damages," but can also be examples of direct  damages.

---

[1]The relevant portion of the Agreement states:
In no event whatsoever shall Developer or Customer or their respective officers, directors, shareholders, agents or employees be liable for consequential, incidental, indirect or special damages, including but not limited to lost profits, lost revenue, lost data, other commercial or economic loss of any kind even if the Developer or the Customer has been advised of the possibility of such damages.
(Filing No. 5-4, ¶ 8).

The issue of whether ATSER's claimed damages are direct or consequential will be for the finder of fact.  However ATSER may characterize its damages, it will be incumbent on ATSER to prove the damages and persuade the jury and the Court that its damages flow directly from Kiewit's breach of contract and/or misappropriation of trade secrets. Accordingly, Kiewit's motion in limine, seeking to preclude ATSER from offering evidence of its alleged damages will be denied.

### 2.  *Misappropriation of Trade Secrets* and *3.  Breach of Contract*

Kiewit asks the Court to preclude ATSER from offering evidence of, or referring to, Kiewit's alleged misappropriation of ATSER's trade secrets, *i.e.*, the Assure-IT 5.0 software program, because "ATSER has not adduced evidence in discovery sufficient to allow it to go forward" with the theory.  (Kiewit Brief, Filing No. 265, p. 1).  In general, Kiewit argues that the Assure-IT 5.0 software is not a "trade secret."  Kiewit acknowledges that this motion in limine is akin to a motion for summary judgment, but notes that the Court has the authority to grant a motion in limine that constitutes a *de facto* summary judgment.  (*Id*., p. 4).  Kiewit also seeks to preclude ATSER from offering evidence of, or referring to, its breach-of-contract claim in general.

At a minimum, the Software License Agreement between the parties ("Agreement," Filing No. 5-4) placed Kiewit on notice that ATSER considered the Assure-IT 5.0 software to "constitute a valuable proprietary product and trade secret" and Kiewit agreed to be bound by certain prohibitions on the use of the software to maintain its confidentiality.  (*Id*., ¶ 6).  Accordingly, the Court declines to grant a *de facto* summary judgment in Kiewit's favor regarding ATSER's claim for misappropriation of trade secrets, or its claim for breach

of contract, and ATSER may proceed on those claims at trial as set forth in the Pretrial Order (Filing No. 278), Controverted and Unresolved Issues, paragraphs 5, 26, and 30.

As Kiewit notes, this Court construed the contractual term "Customer Owned Company" in its Memorandum and Order of January 22, 2010 (Filing No. 225, p.6), and the term will include companies in which the "Customer" (Peter Kiewit Sons' Inc.) directly or indirectly had a controlling or undivided interest at the relevant time.  The Court will instruct the jury on the legal definitions of such terms; and the jury, as the finder of fact, will determine whether any particular entity did or did not fit that definition.

In the same Memorandum and Order, this Court drew a distinction between access to the Licensed Software and access to *data* through the *use* of the Licensed Software. (*Id*., p. 7).  ATSER now argues that "Authorized Users" as defined in paragraph 2.1 of the Agreement are "third parties" under paragraph 3.2 (d) of the Agreement, and may not use, or have access to *data* through the *use* of, the Licensed Software without the written authorization of ATSER.  (ATSER Brief, Filing No. 283, pp. 3-4).  This construction of the Agreement is contrary to this Court's earlier Memorandum and Order, and the Court specifically rejects ATSER's proposed construction of the Agreement.

### *4.  Undisclosed Witnesses, or Witnesses/Evidence Related to Houston Light Rail*

Kiewit seeks to exclude from trial "any ATSER witness not disclosed during discovery, specifically Mark Medico" and evidence or testimony relating to "the City of Houston Metro Light Rail Project and Kiewit's use of MICK thereon."  (Filing No. 270). Kiewit contends that the witness and the information were not disclosed until after the close of discovery and that as a result Kiewit was "deprived of its right to conduct discovery

relating to that information, and consequently unable to conduct any meaningful inquiry into ATSER's self-serving allegations."  (Filing No. 271 at 2).

In opposition, ATSER states that it has no intention of calling Mark Metyko[2] to testify at trial.  (Filing No. 285).  ATSER contends that the information with respect to the City of Houston Metro Light Rail Project that Kiewit seeks to exclude was raised during the 30(b)(6) deposition of ATSER in response to questions posed by Kiewit's counsel.  ATSER further contends that the subject was raised as it sought information regarding Kiewit's use of the Licensed Software on projects led by joint ventures.

The Court will deny Kiewit's Motion in Limine No. 4, without prejudice, and will address any objections made to such evidence, if and when the evidence is offered at trial.

### 5. Payment for Services Rendered on and after January 1, 2009

ATSER notes that it "has no intention of raising the subject," but if Kiewit offers the Court's Memorandum and Order on Plaintiff's Motion for Preliminary Injunction (Filing No. 31) as an exhibit, the door should be open to further evidence on the topic.  (ATSER's Brief, Filing No. 287, p. 2).  At this juncture, the Court will grant Kiewit's Motion in Limine and preclude ATSER from offering evidence of, or referring to, payments made by Kiewit for services rendered by ATSER on and after January 1, 2009, because such evidence or references lack relevance to the issues remaining for trial and could be prejudicial to Kiewit.  This ruling is, of course, without prejudice to the issue being revisited at trial depending upon Kiewit's presentation of evidence.

---

[2]The Court assumes that Mark Medico and Mark Metyko are one and the same person and the alleged undisclosed witness that Kiewit seeks to prevent from testifying at trial.

Accordingly,

IT IS ORDERED:

1.      Defendant ATSER LP's Motion in Limine (Filing No. 258) is granted in part and denied in part as follows:

   a.      Kiewit will not present evidence of, or make reference to, litigation in a United States District Court in Texas between ATSER Research Technologies, Inc., and Raba-Kistner Infrastructure, Inc., involving a patent for technology used in the Assure-IT™ 5.0 software;

   b.      the parties will not refer to settlement negotiations; and

   c.      the remainder of the motion is otherwise denied;

2.      The Motions in Limine submitted by Plaintiffs Peter Kiewit Sons' Inc. and Kiewit Corporation ("Kiewit") are granted in part and denied in part as follows:

   a.      Filing No. 261 is denied;

   b.      Filing No. 264 is denied;

   c.      Filing No. 267 is denied, provided, however, that the parties will be bound by the Court's earlier rulings in its Memorandum and Order of January 22, 2010 (Filing No. 225);

   d.      Filing No. 270 is denied; and

   e.      Filing No. 273 is granted.

DATED this 1st day of April, 2010.

                              BY THE COURT:


                              s/Laurie Smith Camp
                              United States District Judge