## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **PETER KIEWIT SONS' INC.** and **KIEWIT CORPORATION,** | ) CASE NO. 8:08CV541 ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) **FINDINGS OF FACT** ) **AND CONCLUSIONS OF LAW** ) |
| **ATSER, LP,** | ) ) |
| **Defendant.** | ) ) |

This matter came on for bench trial before the undersigned judge on April 12, 2010. The only controverted and unresolved issues remaining for trial were:

Whether ATSER is required to place the source code in an escrow account as set forth in the Agreement, ¶ 3.3; and

Whether Kiewit is entitled to pay the third party escrow agent to maintain the Licensed Software in order that it substantially perform its functions.

(Order on Final Pretrial Conference, "Pretrial Order" (Filing No. 306), p. 2.)[1]

The Court has reviewed and considered the parties' trial briefs (Filing Nos. 308, 309, and 314[2]), the exhibits received into evidence[3], the testimony of the witnesses, and the parties' arguments. Now fully advised in the premises, the Court makes the following findings of fact and conclusions of law.

---

[1] Filing No. 306 is the second Order on Final Pretrial Conference filed in this matter. See Filing No. 278. The second order was filed following Magistrate Judge Thalken's Order (Filing No. 302) following an April 2, 2010, settlement conference.

[2] Kiewit submitted a Plaintiff's Supplemental Trial Brief (Filing No. 314) after the trial, and the Court has reviewed and considered that brief, as well as Kiewit's Evidence in Support of Supplemental Trial Brief (Filing No. 315).

[3] Exhibits 1, 8, 9, 13, 19, 20, 21, 40, 43, 47, 82, and 92 through 98, were received, subject to ATSER's objections to all but Exhibits 1, 21, 95 and 98. ATSER's objections have been considered and are overruled.

**FINDINGS OF FACT**

1. Plaintiff, Peter Kiewit Sons', Inc. ("Peter Kiewit"), is a Delaware corporation with its headquarters in Omaha, Douglas County, Nebraska, doing business throughout the United States, including the State of Nebraska. (Pretrial Order, p. 1.)

2. Plaintiff, Kiewit Corporation, is also a Delaware corporation, with its headquarters in Omaha, and doing business throughout the United States, including Nebraska. (*Id.*, p. 2.)

3. Defendant, ATSER, LP ("ATSER") is a Texas limited partnership with its headquarters in Houston, Texas, doing business throughout the United States, including Nebraska. (*Id.*)

4. This Court has personal jurisdiction over the parties. (*Id.*)

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. (*Id.*)

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district. (*Id.*)

7. The Plaintiffs (collectively "Kiewit") comprise one of the largest construction, engineering, and mining organizations in North America. (*Id.*)

8. ATSER is an engineering services firm that advertises itself as having expertise in web-based technology as it relates to infrastructure, roadway and rail design, and construction and materials. (*Id.*)

9.  On or about August 20, 2005, Peter Kiewit and ATSER entered into an "ATSER Software License Agreement" and 12-page "Proposal," attached to and incorporated in the Agreement by reference therein as the "Documentation." (*Id.;* Exhibit 1, "Agreement.")

10.  The license that ATSER granted was a "nonexclusive, nontransferable fully paid up and perpetual single server license to use object code copies of the Licensed Software[4] and the accompanying Documentation." (Pretrial Order, p. 2; Agreement at § 3.1.)

11.  The Agreement, by its express terms, provided that it would "remain in force in perpetuity unless terminated pursuant to the terms hereof." (Pretrial Order p. 2; Agreement at § 4.1.)

12.  The Agreement prohibited Peter Kiewit from altering or modifying the Licensed Software without the express prior written authorization of ATSER. (Agreement, § 3.2(b).)

13.  Software object codes are proprietary materials, and allow use of the software, but not its modification. (Exhibit 95, p. 3; Agreement at §§ 3.1, 3.2(e); 3 Roger Milgrim and Eric Bensen, *Milgrim on Licensing,* § 24.14, n.83 (Mathew Bender, Rev. Ed.); Testimony of Nainesh Vora.)

14.  Software source codes are also proprietary materials and can be used to modify the subject software. (Exhibit 95, p. 3; Testimony of Nainesh Vora.)

15.  The Agreement included a "Source Code Escrow" provision, as follows:

---

[4] Also referred to as "Assure-IT" and, by Kiewit, as "MICK," an acronym for Mobile Information Collection for Kiewit (Exhibit 41) or Mobile Information Collection system for Kiewit (Exhibit 47).

> Upon request of Customer [Peter Kiewit], the Developer [ATSER] agrees to negotiate and enter into a standard source code escrow agreement with the source code to be held by an independent third party.

(Agreement at § 3.3.)

16. The Agreement included certain limited warranties, including the following:

> Subject to the provisions of paragraph 7.2 below and so long as the Licensed Software has not been modified by a person or entity other than [ATSER] or as directed by [ATSER]
> (I) The Licensed Software will substantially perform the functions described in the Documentation.
> . . . .
> [ATSER] does not warrant or represent that the Licensed Software will meet [Peter Kiewit's] requirements that the Licensed Software will be error free and except as set forth in this paragraph 7.1, the Licensed Software is being provided to Customer "AS-IS." If errors are discovered after initial implementation and while extended support agreement is in place then [ATSER] will correct at no additional cost to [Peter Kiewit].

(Agreement at § 7.1.)

17. The "Documentation," referred to in § 7.1 of the Agreement included "Appendix A: Product Feature Sheet" (Agreement, Proposal p. 7) and a listing of "Key Features" of the Licensed Software. The "Key Features" included "Inspections & Field Reporting using Handheld Computer PDAs" and "User Defined Electronic Checklist based on Specifications & Drawings." (*Id.*)

18. From August 2005 through December 2008, ATSER provided hosting and technical support for the web-based software and database pursuant to the Agreement. (Pretrial Order, p. 2*;* Agreement, Proposal pp. 5-6.)

19. By letter dated December 19, 2008, Kiewit requested that ATSER place the source codes for the Licensed Software into escrow pursuant to § 3.3 of the Agreement. (Exhibit 21.)

4

20. ATSER has not placed the source codes in escrow for Kiewit. (Testimony of Nainesh Vora, Scott Pfender.)

21. ATSER has entered into a source code escrow agreement with another customer, but that escrow agreement was entered into for the duration of ATSER's service agreement for the software. ATSER has not and is unwilling to enter into source code escrow agreements that do not terminate when ATSER's contract for the servicing of the software ends. (Testimony of Nainesh Vora.)

22. Kiewit brought this action for injunctive relief and damages on December 30, 2008, alleging ATSER breached the Agreement by failing to relocate the license to a Kiewit computer server and by threatening to disrupt or terminate Kiewit's access to the web-based software and database. (Pretrial Order, p.2; Complaint, Filing No. 1, p.3.)

23. This Court granted injunctive relief on January 12, 2009, ordering ATSER to transfer the Licensed Software and accumulated historical data to a Kiewit server, which has been completed. (Pretrial Order, p. 2; Memoranda and Orders at Filing Nos. 31, 121.)

24. In June 2009, when ATSER completed the transfer of the Licensed Software to the Kiewit server pursuant to the Court's Order of January 12, 2009, the Licensed Software was properly performing all its key functions. (Testimony of Nainesh Vora.)

25. At some time after ATSER effected the transfer of the Licensed Software to the Kiewit server, Kiewit began to experience problems with the functioning of the Licensed Software with respect to the two "Key Features" listed in paragraph 17, above, and the Licensed Software is not substantially performing those two functions. (Testimony of Terry Constable and Scott Pfender.)

26. ATSER did not put any "bug" in the Licensed Software or intentionally sabotage it to cause it to lose any function. (Testimony of Nainesh Vora.)

27. Kiewit has used and continues to use the Licensed Software in conjunction with other software applications, including Microsoft Servers, Oracle, Crystal Reports, Pendragon, and Palm OS. (Agreement, Proposal pp. 5-6; Testimony of Nainesh Vora, Terry Constable, and Scott Pfender.)

28. Kiewit wishes to use the source codes for the Licensed Software to patch the Licensed Software, as needed, to ensure that it substantially performs all its Key Features, and to update the Licensed Software to meet "current state specifications," as those specifications may change from time to time. (Testimony of Terry Constable and Scott Pfender; Agreement, Proposal pp. 10-12.) Such patches and updates require alterations or modifications to the Licensed Software. (Testimony of Nainesh Vora.)

29. David ("Fred") Martinez, ATSER's Chief Executive Officer and signatory to the Agreement, testified on June 16, 2009, that he had no "issue" with putting the source codes in escrow, but noted repeatedly that he "would be very careful" about the terms of any such agreement based on his "past experience with Kiewit." (Exhibit 98, Designations of Martinez Deposition ("Martinez Depo."), 229:22 to 230:22; Agreement, p. 7.)

30. Martinez also testified on June 16, 2009, that the purpose of the source code escrow agreement provision was "[i]n the event that ATSER could not perform[.]" (Martinez Depo., 243:18-20.)

31. Kiewit's lack of access to source codes for the Licensed Software results in the Licensed Software failing to perform some of its Key Features, and creates a burden for Kiewit. (Testimony of Terry Constable, Scott Pfender.)

32.  ATSER is able to provide continued service and maintenance for the Licensed Software, but the parties have not agreed, and are not likely to agree, on essential terms of an extended service agreement. (Martinez Depo. 239:7-13; Testimony of Nainesh Vora and Terry Constable.)

33.  Source code escrow agreements may contain a variety of terms and provisions, including, *inter alia*, the name of the escrow agent; the name of the owner (licensor, developer, vendor); the name of the beneficiary (licensee, customer, user); the identity of the deposit materials; the duration of the agreement; the release conditions (*e.g.*, owner goes out of business, takes bankruptcy, or breaches maintenance obligations); permitted uses of the deposit materials upon occurrence of a release condition; whether materials are released directly to the beneficiary or another party to effect the permitted uses; procedures whereby the owner may dispute the occurrence of a release condition to prevent release; recourse for damages in the event of improper release or use of the deposit materials; consideration for the owner; and consideration for the escrow agent. (Exhibits 92-97.)

**DISCUSSION AND CONCLUSIONS OF LAW**

The Court finds all the witnesses in this matter to be credible.  There are no genuine issues of material fact to be resolved by the Court.  When this matter was addressed earlier in connection with Kiewit's Motion for Preliminary Injunction, the Court said:

> Kiewit has not demonstrated that it is likely to prevail on the merits of its argument that . . . the Software License Agreement mandates that ATSER provide its Licensed Software source codes to Kiewit or place them in escrow with a third party for Kiewit's benefit.  Kiewit . . . will certainly have the opportunity to present evidence to persuade the finders of fact that usage of source code escrow agreements in the trade applicable to this dispute should supplement the terms of the License Agreement and mandate

> ATSER's transfer of the source codes into escrow. The limited evidence before the Court at this preliminary stage of the proceedings does not lead the Court to that conclusion.

(Memorandum and Order, Filing No. 158, p. 6.)

The evidence at trial revealed no trade custom or usage[5] that allows the Court to infer a meeting of the minds regarding a source code escrow agreement for Kiewit's use of the Licensed Software source codes beyond the term of the three-year data-center-hosting and technical-support agreement.

The parties' Agreement is governed by Texas Law. (Agreement, § 11.5). The Texas Supreme Court has held that "an agreement to make a future contract is enforceable only if it is 'specific as to all essential terms, and no terms of the proposed agreement may be left to future negotiations.'" *Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 846 (Tex. 2000) (quoting *Foster v. Wagner*, 343 S.W.2d 914, 920-21 (Tex. Civ. App. 1961)). "[W]hen an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Id.* (citing *Pine v. Gibraltar Sav. Ass'n*, 519 S.W.2d 238, 244 (Tex. Civ. App. 1974)).

Kiewit cites *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 731-32 & n.2 (Tex Ct. App. 2003), for the proposition that Texas courts will infer reasonable terms when necessary to effectuate the purposes of an agreement. In *Lidawi*, the Texas Court of Appeals inferred a reasonable term where the insurance contract in question was silent

---

[5] Under Texas law, trade custom or usage does not supplement a contract unless it is known personally by the parties or is so general and universal that the parties are charged with knowledge of its existence. *Virginia Power Energy Marketing, Inc. v. Apache Corp.*, 297 S.W.3d 397, 406 (Tex. App. 2009).

as to that term.  *Id*. at 734.  The Texas Court of Appeals quoted *State Farm Fire & Cas. Co. v. Tan,* 691 F. Supp. 1271, 1273 (S.D. Cal. 1988), for the following proposition: "Where precise details of an agreement have not been defined by the parties, the court should assume the parties implicitly intended the agreement to operate in a reasonable manner." *Lidawi,* 112 S.W.3d at 732.

While a court well may infer a reasonable term necessary to effectuate an agreement when it is clear that a contract exists and the contract is silent as to a detail, there was never a meeting of the minds on the major and essential terms of a source code escrow agreement between Peter Kiewit and ATSER such that this Court can infer that any such contract ever existed.

First, there is no meeting of the minds on the duration of any source code escrow agreement.  Kiewit contends that the duration of a source code escrow agreement giving Kiewit access to the source codes for the Licensed Software should be perpetual.  ATSER contends that any source code escrow agreement would expire at the end of a software maintenance contract and simply would serve to assure the customer of continued maintenance of the software for the term of the contract, in the event of a breach by ATSER.

Second, there is no meeting of the minds on the conditions that would trigger the release of source codes to Kiewit by an escrow agent.  Kiewit contends that conditions effecting Kiewit's right to release of the source codes have already occurred, *i.e.*, ATSER's refusal to continue to service the Licensed Software for Kiewit for $6,000 per year, or on a time-and-materials basis, and subsequent problems with the Licensed Software not performing its key features or functions as listed in the Agreement, Proposal p. 7.

Accordingly, Kiewit suggests that the source codes for the Licensed Software be delivered to Kiewit immediately or that a third party be designated to perform the maintenance that ATSER has declined perform for the consideration Kiewit has offered.  ATSER contends that no condition effecting any right to release of the source codes has occurred, because ATSER met its obligations under the Agreement, including the three-year hosting and technical-support provisions.

Third, there is no meeting of the minds regarding the permitted uses of the source codes.  Kiewit contends that the permitted uses should include the patching of the Licensed Software when malfunctions occur or errors are discovered, and also the updating of the Licensed Software as needed to comply with state specifications for material quality tests and inspection reports, as such specifications are modified by state agencies from time to time. (See, *e.g.*, Agreement, Proposal pp 10-12.) ATSER contends that any such uses of the source codes would involve an alteration or modification of the Licensed Software and cannot be done without the express prior written authorization of ATSER.  (Agreement at §3.2(b); Testimony of Nainesh Vora.)

The source code escrow clause of the Agreement, § 3.3, is an agreement "to negotiate and enter into" an agreement.  This Court concludes, as a matter of law, that the clause is an "agreement to agree," and this Court will not infer terms to effectuate a contract that does not exist.

## CONCLUSION

Kiewit has failed to demonstrate, by a preponderance of the evidence, that it is entitled to the relief it seeks.  Accordingly, ATSER is not required to place the source codes for the Licensed Software in an escrow account under the Agreement, § 3.3, and Kiewit

is not entitled to pay a third party escrow agent to maintain the Licensed Software in order that it substantially perform its key features or functions.

Kiewit's action will be dismissed, with prejudice, and a separate Judgment will be entered, dismissing all claims and counterclaims, with prejudice.

DATED this 16th day of April, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge